## Shoenberger *against* Lyon.

A reservation in a deed of conveyance which is as large as the grant itself, is void, and the grant is valid.

S. and L. being tenants in common of Huntingdon Furnace and the lands appurtenant thereto, and at the same time owners of a right to dig, take and carry away ore to be used at Huntingdon Furnace, from a tract of land which belonged to a third person, L. conveyed to S. all his right, title and interest in the said furnace-lands and ore-banks, excepting and reserving " the full undivided half part of all the iron ore which may at any time be found on any of the land now belonging to Huntingdon Furnace, as hereinafter described, within not less than the distance of two miles from said Huntingdon Furnace." *Held*, that this was not a reservation of the right to take ore from the bank on the land which then belonged to the third person, although it was not within two miles of the said furnace.

ERROR to the Common Pleas of *Huntingdon* county.

John H. Shoenberger and George K. Shoenberger against John Lyon, Anthony Shorb, David Stewart, William C. Stewart, and George Riter. This was an action of ejectment " for 10 acres of land containing an ore-bank, situate in Warriors-mark township, Huntingdon county, called Guno ore-bank."

And now, to wit, the 17th April 1838, a jury being sworn on the issue joined, return the following special verdict, that is to say, " They find that on the 1st June 1812 John Gloninger & Co. conveyed the land in question to Daniel Beck, (reserving among other rights that of digging ore). Prout deed. That, at that time, the firm of John Gloninger & Co. were John Gloninger, George Anshuts, Martin Dubbs, who each owned one-fourth of Huntingdon Furnace, &c.; and Dr P. Shoenberger and Abraham Hackman, the other fourth. Subsequently, Abraham Hackman conveyed his interest to Dr P. Shoenberger. Dr Shoenberger also became the owner of the interest of Martin Dubbs. The defendants (except

Riter, who is a manager) became the owners of the interests of John Gloninger and George Anshuts. Huntingdon Furnace was conducted for some time immediately before the releases hereafter referred to by Dr Shoenberger and the defendants, according to their respective rights in the same.

The jury further find that Bald Eagle Furnace was owned by John Gloninger, Martin Dubbs and George Anshuts, each one-third; that Dr Shoenberger purchased the interest of Martin Dubbs, and the defendants the interests of John Gloninger and George Anshuts; and that they conducted the said furnace immediately before the releases hereinafter referred to, according to their rights in the same.

The jury find that on the 17th August 1835 the deed of release of the defendants to Dr Peter Shoenberger was executed and delivered for half of Huntingdon Furnace and Elizabeth Forge, (prout deed). And that, by articles dated the 18th July 1835, Peter Shoenberger granted Huntingdon Furnace and Elizabeth Forge, with their lands, &c., to George K. and John H. Shoenberger, the plaintiffs, in fee; and the plaintiffs entered into possession thereof, in pursuance of the said articles, before this action brought.

The jury further find, that on the 22d February 1797 Job Packer and wife conveyed to John Canan three tracts of land, one of which is the Beck tract; that on the 20th September 1810, John Canan, by deed of assignment, conveyed the land in the deed of Job Packer and wife to John Gloninger & Co. as tenants in common. Also, that on the 10th August 1808 M. Massey conveyed to George Shoenberger the one-fourth of Huntingdon Furnace; and on the same day M. Massey conveyed to John Gloninger the whole of Huntingdon Furnace, reserving the one-fourth. Also, that on the 29th October 1831 John Gloninger and wife conveyed to A. Shorb, John Lyon, David Stewart and John Forster, the one-fourth of Huntingdon Furnace, &c. Also, a deed from George Anshuts and wife to the same persons for another fourth. Also, a deed from the Farmers' and Mechanics' Bank and Paul Beck, Jun. to Dr Peter Shoenberger for another fourth of Huntingdon Furnace, &c., being the fourth held by Martin Dubbs.

The jury further find, that Dr Peter Shoenberger and wife executed a deed of release of the one-third of Bald Eagle Furnace and the Tyrone forges, of the land, &c. recited therein, on the 17th August 1835, (prout deed).

The jury find that the defendants are in possession for the purpose of raising ore, and have raised ore both before and after the bringing of this ejectment, for Bald Eagle Furnace, on the tract of land mentioned in the deed signed John Gloninger & Co., of the 1st June 1812, in this special verdict before referred to. They further find that both parties did raise ore on said tract before the

division and releases hereinbefore mentioned for Bald Eagle Furnace and Huntingdon Furnace; *but that the right in the Beck tract, which is in question, belonged to Huntingdon Furnace, and that Bald Eagle* Furnace *accounted* to Huntingdon Furnace for the ore taken from the said tract: and that the said tract of Beck on which the ore is raised is more than two miles from Huntingdon Furnace, and the ground on which the said furnace stands.

And the jury do further say, that they are ignorant in point of law upon which side they ought to find upon the foregoing facts and conveyances so found. That if, upon the whole matters, the court shall be of opinion that the issue is proved by the plaintiffs, they find accordingly for the plaintiffs, with 6 cents damages and 6 cents costs; but if the court are of a contrary opinion, that upon the facts so found and the conveyances the law is with the defendants, then the jury find for the defendants."

Deed referred to in special verdict from *John Gloninger & Co. to Daniel Beck, dated* 1*st June* 1812, by which the said John Gloninger & Co. conveyed to the said Daniel Beck a tract of land situate in Warriors-mark township, Huntingdon county, containing 476 acres 14 perches, surveyed on a warrant to Robert Cooper, which deed contains the reservation referred to in the following words, to wit:

" Reserving out of this grant unto the said Gloninger & Co., their heirs and assigns, all the timber, wood, and ore and mines of every kind on the said tract of land being, with the right, liberty and privilege of entering upon the said tract of land, or any part thereof, at such times as to them or any of them, or to their manager or agent, shall seem expedient, with workmen, wagons, carts and teams, for the purpose of cutting, coaling and taking away the wood, timber and coals, and of digging, raising and taking away the ore and mines, and to do and perform any other act, work, labour or thing on the same, as may be deemed necessary and proper by them to carry the same into operation and effect."

17th August 1835. *Deed of release* from John Lyon, Anthony Shorb and wife, David Stewart and wife, and William C. Stewart and wife, to Dr Peter Shoenberger, referred to in special verdict.

" Whereas, on the 16th day of July, A. D. 1835, the said John Lyon, Anthony Shorb, David Stewart and William C. Stewart, and Dr Peter Shoenberger, of the county of Allegheny and State of Pennsylvania aforesaid, were partners engaged in the business of manufacturing iron, and *joint owners in the proportions hereinafter stated* of Huntingdon Furnace, Elizabeth Forge, Bald Eagle Furnace, and the Tyrone forges, *and of all the lands, tenements, hereditaments and appurtenances, and of the stock and property thereunto belonging;* that is to say, the said John Lyon, Anthony Shorb, David Stewart and William C. Stewart *were the owners of the one undivided half part of Huntingdon Furnace and Elizabeth Forge, and of all the lands, stock, credits and property, real, per-*

*sonal and mixed, thereunto attached or belonging ;* and the said Dr Peter Shoenberger was the owner of the other undivided half part of the same. And the said John Lyon, Anthony Shorb, David Stewart and William C. Stewart were also the owners of the two undivided third parts of Bald Eagle Furnace and of the Tyrone forges, and of all the lands, stock, credits and property, real, personal or mixed, thereto attached or belonging; and the said Dr Peter Shoenberger was the owner of the remaining third part of the said last-mentioned establishments, and of the lands, stock, credits and property, real, personal or mixed, thereunto belonging or in anywise appertaining.

And whereas, on the said 16th day of July aforesaid, the said parties above-named dissolved the partnership existing between them by articles of agreement executed by the said John Lyon, Anthony Shorb and David Stewart, contracting for themselves and William C. Stewart of the one part, and by the said Dr Peter Shoenberger of the other part, bearing date the said 16th day of July aforesaid, and made an amicable partition and division of their joint-stock and partnership property, and covenanted and agreed to execute mutual releases to each other according to the terms and provisions of the said articles of agreement, as by reference to said articles of agreement, intended to be recorded, more fully and at large will appear.

Now know ye, that the said John Lyon, Anthony Shorb and Elizabeth his wife, David Stewart and Sarah his wife, and the said William C. Stewart and Jane his wife, by their attorney in fact aforesaid, in consideration of the covenants in the said articles of agreement by the said John Lyon, Anthony Shorb, David Stewart and William C. Stewart to be observed and performed, and in compliance with the same, and in further consideration of the sum of one dollar to them in hand paid, at or before the sealing and delivery of these presents, by the said Dr Peter Shoenberger well and truly paid, the receipt whereof is hereby acknowledged, have granted, remised, released, and for ever quit-claimed, and by these presents do fully and absolutely grant, remise, release and for ever quit-claim unto the said Dr Peter Shoenberger, and to his heirs, executors, administrators and assigns, all their the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart's *one undivided moiety or half-part of the above and before mentioned Huntingdon Furnace and Elizabeth Forge ; and of all the lands, stock, partnership effects, credits and property, real, personal, or mixed, thereunto attached or belonging ;* and all other the estate, right, title, interest, property, claim and demand whatsoever, of them the said John Lyon, Anthony Shorb and Elizabeth his wife, David Stewart and Sarah his wife, and William C. Stewart and Jane his wife, of, in, to, or out of the said Huntingdon Furnace and Elizabeth Forge; or of, in, to, or out of any of the lands, (except as hereinafter excepted), stock, partnership,

[Shoenberger v. Lyon.]

effects, credits or property, real, personal or mixed, thereunto be-longing, or in anywise appertaining; which said lands and appur-tenances constituting the real estate, are as hereinafter described; that is to say, a tract of land situate in Franklin township, in the county of Huntingdon aforesaid," &c. (Other tracts are then de-scribed.) And amongst other things therein described, granting, remising, releasing, and forever quit-claiming unto the said Dr Peter Shoenberger and his heirs and assigns, "Also, the *rights and privileges* reserved in and by a deed of conveyance from John Gloninger & Co. to Daniel Beck, bearing date the 1st June 1812, and recorded, by which the said John Gloninger & Co. conveyed to the said Daniel Beck a tract of land situate in Warriors-mark township, containing 476 acres 14 perches, surveyed on a warrant to Robert Cooper, which deed contains a reservation as follows, to wit:—Reserving out of this grant unto the said John Gloninger & Co., their heirs and assigns, all the timber, wood, and ore-mines of every kind on the said tract of land being, with the right, liberty, and privilege of entering upon the said tract of land, or any part thereof, at such times as to them, or any of them, or to their ma-nager or agent shall seem expedient, with workmen, wagons, carts and teams, for the purpose of cutting, coaling, and taking away the wood, timber and coals, and of digging, raising, and taking away the ore and mines, and to do and perform any other act, work, labour or thing on the same, as may be deemed necessary and proper by them, to carry the same into operation and effect;" with a note at the bottom of said deed that the right to cut tim-ber extends only to the original growth, &c. &c. "Together with all and singular the buildings and improvements, barns, stables, out-houses, ways, woods, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining; and the reversions and remainders, rents, issues and profits thereof: they, the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, *nevertheless expressly reserving to themselves* and to their heirs and assigns, *out of* the grant and release herein and hereby made, the full one undivided half-part of all the iron ore which at any time may be found *on any of the lands now belonging to Huntingdon Furnace and Elizabeth Forge, as hereinbefore described, within not less than* the distance of two miles from said Huntingdon Furnace, (or from the ground on which said Huntingdon Furnace now stands), for the use of Bald Eagle Furnace, or any other furnace which may hereafter be built at or near the place where said Bald Eagle Furnace now stands, in the room and stead of said Bald Eagle Furnace, by the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs and assigns:—And they, the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, hereby further expressly reserving to them-selves, and to their heirs and assigns, the right of free ingress,

egress and regress into, over, upon and from said lands, (lying and being as aforesaid within not less than two miles from Huntingdon Furnace, or within the distance of not less than two miles from the ground on which said Huntingdon Furnace now stands), with workmen, wagons, carts and teams, to take and carry away said iron ore for the use aforesaid, at all times: and expressly further reserving to themselves, the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs and assigns, the right and privilege of digging for said ore, of mining in the most advantageous manner, and of excavating and subverting the soil of the said Dr Peter Shoenberger, his heirs or assigns, at any place in the lands aforesaid, within not less than two miles as aforesaid from Huntingdon Furnace, for the purpose of taking the iron ore herein and hereby reserved by the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, to themselves, their heirs and assigns, for the use of Bald Eagle Furnace, or any other furnace which may hereafter be built by the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs or assigns, at or near the same place where Bald Eagle Furnace now stands, and in its stead or room: and expressly further reserving to themselves, the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs and assigns, the right of doing all acts, matters and things, necessary for the convenient enjoyment of the rights herein and hereby reserved, so as to interfere as little as practicable with the estate and interests hereby released and conveyed to the said Dr Peter Shoenberger, his heirs and assigns; it being expressly understood that the other undivided half-part of all the iron ore which may at any time be found on any of the lands hereinbefore described and situate as aforesaid, within not less than two miles of Huntingdon Furnace, is to be for the use of the said Huntingdon Furnace, or any other furnace which may hereafter be built by the said Dr Peter Shoenberger, his heirs or assigns, at or near the place where said Huntingdon Furnace now stands, in the room and stead of said Huntingdon Furnace. And it being further expressly understood, and it being the true understanding of the parties, that the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs and assigns, and the said Dr Peter Shoenberger, his heirs and assigns, are to be held and considered to be tenants in common in regard to the iron ore in and upon the land aforesaid, within not less than two miles as aforesaid from Huntingdon Furnace, in equal and undivided moieties as before stated, (the reservation herein and hereby before expressed not to be construed in any manner to extend to any lands herein and hereby released, situate and being within the distance of two miles from Huntingdon Furnace, or within the distance of two miles from the ground on which said Huntingdon Furnace now stands, or to any iron ore in or upon the same). It being

further the true understanding and agreement of the parties to these presents, that if both parties, their heirs or assigns, should wish to exercise the right of raising and taking ore from the same bank or pit on any of the lands aforesaid, within not less than two miles as aforesaid from Huntingdon Furnace, they are to pay an equal proportion of the expenses of opening the bank, and of raising the ore; and the ore, when raised, is to be equally divided in the proportions before stated; that is to say, in equal moieties between the said Dr Peter Shoenberger, his heirs and assigns, on the one side, and the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, their heirs and assigns, on the other. And it is further the understanding of the parties, that neither party is to be at liberty to take iron ore off of the said lands to which the reservations hereinbefore expressed extend for more than one furnace at any one time without the consent of the other, their heirs or assigns."

1835, August 17. Deed of Release from Dr Peter Shoenberger and Sarah his wife, unto John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, in consideration of the covenants in certain articles of agreement between said parties, of all the estate, right, title and property of the said Dr Peter Shoenberger and wife, of, in and to Bald Eagle Furnace and Tyrone Forges, and the lands, rights and effects attached thereto, (being the one-third), reciting the before-mentioned deed of release from John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, to the said Dr Peter Shoenberger, of same date, of their right, title and interest of, in, and to Huntingdon Furnace and Elizabeth Forge, and the lands, effects and property belonging and attached thereto; and that they had reserved to themselves the full undivided half-part of all iron ore which at any time may be found on the lands now belonging to Huntingdon Furnace and Elizabeth Forge, &c., in the same words as are contained and before set forth in the deed of release before recited. And the said Dr P. Shoenberger and Sarah his wife, in consideration of the covenants in the said articles of agreement, do grant and confirm unto the said John Lyon, Anthony Shorb, David Stewart, and William C. Stewart, and their heirs and assigns, the right of free ingress, egress, and regress into, over, upon and from all and every the lands now belonging to Huntingdon Furnace and Elizabeth Forge, or either of them, as described in the deed of release aforesaid, of even date herewith, situate, lying and being within not less than two miles from Huntingdon Furnace, or within the distance of not less than two miles from the ground on which said Huntingdon Furnace now stands, with their workmen, wagons, carts and teams to mine and carry away one full undivided half-part of all the iron ore which at any time may be found on any part of the lands aforesaid, situate as aforesaid, within not less than two miles from said Huntingdon Furnace, for the use of Bald Eagle Furnace, or

any other furnace which may hereafter be built at or near the place where said Bald Eagle Furnace now stands, in the room and stead of said Bald Eagle Furnace, by the said John Lyon, Anthony Shorb, David Stewart and William C. Stewart, their heirs or assigns, hereby expressly confirming and recognising the reservations and restrictions and qualifications in the deed of release before-mentioned and expressed; but neither the reservations in the said deed of release mentioned, nor the grant and confirmation herein expressed, are to be construed to extend to any lands in the said deed of release mentioned and described, lying and being within two miles of Huntingdon Furnace, or within two miles of the ground on which said Huntingdon Furnace now stands.

The court below rendered a judgment for the defendants. The cause was argued in this court at May term 1842, and held under advisement, and a re-argument directed; and it was again argued by

*Bell*, for plaintiff in error.
*Miles*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Dr Peter Shoenberger, from whom the plaintiffs deduce their title, owned a moiety of Huntingdon Furnace, Sligo Forge, and the lands appurtenant, as well as a moiety of the ore reserved out of the grant of a tract of land by Gloninger & Co., under whom all parties claim, to one Beck; and the defendants owned a moiety. Dr Shoenberger owned also a third of Bald Eagle Furnace, of the Tyrone forges, and of the lands appurtenant; of which the defendants owned two-thirds. The parties agreed to make partition of the whole, and to that end Dr Shoenberger conveyed to the defendants his third of Bald Eagle Furnace, the Tyrone forges, and the lands appurtenant; while the defendants conveyed to him their moiety of Huntingdon Furnace, Elizabeth Forge, and the *lands* appurtenant, (specifying the particular tracts), and also, by a separate and special clause, their moiety of the ore reserved out of the grant of Gloninger & Co. to Beck, in these words: "Also, the rights and privileges reserved in and by a deed of conveyance from John Gloninger & Co. to Daniel Beck, by which the said John Gloninger conveyed to the said Daniel Beck a tract of land, &c., which deed contains a reservation as follows, to wit: 'Reserving out of this grant to the said John Gloninger & Co., their heirs and assigns, all the timber, wood, and ore-mines of every kind on the said tract being, with the right, privilege and liberty of entering on the said tract of land, &c.,'" with a memorandum at the foot that the right to cut was limited to timber of the first growth. While the defendants thus specially conveyed their share of the ore reserved in Gloninger's grant to Beck, they reserved generally from their grant to

Dr Shoenberger " the full undivided half-part of all the iron-ore which may at any time be found *on any* of the *land* now belonging to Huntingdon Furnace or Elizabeth Forge, as hereinafter described, within not less than the distance of two miles from said Huntingdon Furnace, for the use of Bald Eagle Furnace." Then followed the reservation of a right to enter, dig and carry away, with a proviso that the other half should be for the use of Huntingdon Furnace. The Beck tract is distant more than two miles from Huntingdon Furnace; and the question is, whether the defendants' moiety of the ore in it, which they conveyed by a special clause, as the *rights* and *privileges* reserved by Gloninger, was taken back by the general reservation of the ore to be found on the *lands* then belonging to Huntingdon Furnace or Elizabeth Forge, or rather whether it passed at all.

The defendants insist that though it may have been ore in the contemplation of the parties, it was land in contemplation of the law; and they suppose that if they have established that, they have brought it within the words of the general reservation.

It is certainly true that a thing reserved remains as it was. A reservation, operating as it does by way of exception, keeps the thing from passing just as if there were no grant at all; so that, if this ore was land before the tract was granted to Beck, it was land afterwards, and consequently corporeal; in which respect the reservation of it differed from the reservation of a thing issuing out of land, like a rent, which is no part of it. There is no inconsistency between the reservation of a rent and a grant of the land, because nothing is to be taken back which has passed by the deed. Of a grantor's power, however, to take back with one hand what he gives with the other, more will be said presently; but, to speak to the question of intention, what matters it that the ore reserved in the grant to Beck was land in contemplation of law, if it was not land in the contemplation of Dr Shoenberger and the defendants, or *the* land they intended to reserve by that description? It is scarce necessary to advert to the great rule that the construction be as near to the apparent intent as possible, and " that too much regard be not had to the nature and proper definition, signification and acceptance of words and sentences, to pervert the simple intention of the parties." *Touchstone* 86. Neither is it necessary to advert to the rule that the meaning is to be collected, not from particular words, but from the context; and not from particular parts of the instrument, but from all the parts of it together. These are cardinal principles which come to the mind unbidden.

Is it possible, then, that the parties contemplated a reservation of ore by the name of land, out of what was itself ore, and out of what they had not granted as land, but as rights and privileges previously reserved in a deed to which they referred for a specific description of the thing, and in which it was called ore? If the

defendants' share of it were supposed to fall within their general reservation as land, it would have been supposed to fall within the general terms of their grant as land; and a special clause, granting it by a particular designation of it, would have been unnecessary. In other words, if they had thought it land to be embraced by the general terms of their reservation, they would have thought it land to be embraced by the general terms of their grant. The right to a mine may be severed from the soil, as in *Doe* v. *Wood*, (7 *Barn. & Ald*. 724); and that the defendants thought the right had been severed in this case, though they knew nothing about the decision in that, is shown by the fact that they did not describe it as a part of the soil; and that they did not convey it as land, shows that they did not view it as land within the general clause of reservation, which had regard to land, and nothing else. It would have been absurd to reserve the ore from a grant of land which, according to the defendants' argument, consisted entirely of ore; for the grant and the reservation could not have stood together.

But the reservation was of ore lying on land *then* belonging to Huntingdon Furnace or Elizabeth Forge; and why qualify it as to time, unless to restrict the generality of the words to land which was once appurtenant to that furnace, or that forge, but which was so no longer? We cannot choose but think that the qualification had for its object the exclusion of the ore in the Beck tract from the reservation, because it is not found that the parties owned other lands which had been detached from Huntingdon Furnace or Elizabeth Forge, and it does not appear that there was anything else for its operation. If the ore in the Beck tract is not excluded by implication, what else is? It is true that if it was land in the contemplation of the parties, it was land then belonging to Huntingdon Furnace, and the negative implied by the word "now" would be inapplicable to it; but to give that word effect—and every word in a deed must be made to operate where it may—it ought to be shown that it was intended for something else. But the right to this particular ore had been severed from the land; and the restriction of the reservation to ore on land belonging to Huntingdon Furnace or Elizabeth Forge was doubtless intended to exclude it. The popular distinction between ore and land seems to have been studiously preserved; else why speak of ore lying on land, if the ore itself was deemed to be land? To do so would be absurd.

Again. If the parties intended to retain their shares of this ore, why put it in the conveyance at all? They were joint tenants of it in equal proportions; and, according to the arguments, they are so still, the conveyance being so far a dead letter. Now, it is a rule, as we have said, that every part of a deed must be allowed to operate if it may; but, according to the defendants' interpretation, the mutual action and reaction of the grant and reservation

are so nicely balanced that neither can operate, and the title remains where it was—an interpretation that was rejected by this court in *Baker* v. *M'Dowell*, (3 *Watts & Serg.* 358), where a grant of part of a mine was attempted to be neutralized in the same way. It is true that the timber growing on the Beck tract was reserved along with the ore, and that the defendants' grant might at one time have operated on it as one of the privileges conveyed; but the reservation was restricted to timber of the first growth, which in the usual course of things is cut off once in sixteen years to supply the coals necessary for a forge or a furnace; and this part of it had consequently become obsolete in the period of three-and-twenty years which intervened between the two conveyances.

But, whatever were the intention, the rule that a reservation which is as large as the grant is void, and the grant valid, would control it. A reservation being an exception out of the thing granted, keeps the part reserved from passing; and unless it were smaller than the thing granted, nothing would pass, so that the grant would be void. But the law presumes that the grantor intended that his conveyance should take effect, and it gives effect to it in the only way it can, by disregarding the reservation. A valid reservation, therefore, must be the saving of a smaller thing out of a greater, or a particular out of a general; as a room out of a house, or timber out of a manor. The subject of it must be not only a thing not expressly granted, but an accessory which is not inseparable from its principal. Again. Where it would destroy the entirety of the thing granted, it is void; as where the manorial court is excepted out of the grant of a manor, for there can be no manor without its court. So where it would destroy the grant altogether; for it has been held that a lease of all the lessor's lands in a particular place, except his manor, passes the manor if he has no other lands there; and that a lease of a house and shops, except the shops, passes the whole. Every saving which crosses the grant is, so far as it is repugnant, of no force; and it is repugnant wherever the thing must necessarily pass, in the first instance, to satisfy the words. Many more examples of this common-place principle might be taken from *Touchstone*, (p. 78), where authorities for them are quoted. They are illustrations of the rule already glanced at, that all the parts of a deed shall operate where they may, and that, where they may not, those shall be rejected which stand in the way of its operating at all.

Now, the saving out of the grant of this ore is just as large as the grant itself. It is true that the saving in the grant from Gloninger to Beck included " ore-mines *of every kind;*" and that the subject was granted to Dr Shoenberger in terms as large, while the reservation in the grant to the latter is of *iron* ore only. But the ore of no other metal was found in the region; and as the reservation was to benefit Gloninger as a manufacturer of iron, the

[Shoenberger v. Lyon.]

presumption is that it was to be not more extensive than the necessities of his business. The difference between the words of the two reservations, in the terms of the first of which the subject was granted to Dr Shoenberger, was evidently the accidental work of the scrivener. It is true, too, that those terms were large enough to carry the timber; but at the end of twenty-three years the presumption is that the first growth of it had been exhausted. It would not differ the case if no such presumption were made; for the ore being expressly granted by reference to a deed in which it was specifically euumerated, could not be reserved. The case is in principle that of the house and shops, in which the saving of the shops was held to cross the demise of the whole. Independently, then, of interpretation, and of actual or constructive intention, this saving is repugnant and void by force of a plain, rational and undoubted rule of the common law.

Judgment of the Common Pleas reversed, and judgment rendered by this court for the plaintiffs.