## BALCH, ET AL., v. ARNOLD, ET AL.

AMBIGUITY IN WRITING, EVIDENCE TO EXPLAIN — DEMURRER —
    DEEDS — ESTOPPEL — PATENT AMBIGUITY — EXCEPTIONS AND
    RESERVATIONS — MORTGAGE — STATUTE OF LIMITATIONS —
    CONSTRUCTIVE NOTICE BY RECORD — PUBLIC POLICY.

1.  While direct evidence of intention is not admissible in explanation of ambiguous terms in a writing, yet proof of collateral facts and surrounding circumstances existing when the instrument was made may be properly admitted, in order that the court may be placed as nearly as possible in the situation of the contracting parties, with a view the better to adjudge in what sense the language of the instrument was intended to be used, and to apply it to the subject-matter.

2.  Defendant set out in full, and claimed under, a certain mortgage. The reply denied that any lands were conveyed by the mortgage, and alleged that when the mortgage was executed the lands belonged to the United States, and the title of the government was excepted from the grant of the mortgage. The question turned upon the construction of an ambiguous exception in the warranty. The trial court sustained a demurrer to the reply. *Held,* that the question should not have been determined upon the demurrer, as the parties were thereby denied the right to introduce evidence of the situation of the parties, and the court had only a copy of the instrument before it, and hence the demurrer should have been overruled.

3.  In the case of mere quit claim deeds—deeds which contain no covenants, and do not purport to convey anything more than the interest of the grantor at the time of their execu-

2

tion, and there is no legitimate inference from the terms of the instrument that the grantor has any definite estate, and no necessary inference that he has any interest in the lands— nothing passes but the right, title, and interest at the time, and no after-acquired title will inure to the grantee.

4.  A deed may be so plain and explicit as to require the court to construe it to be a quit claim of the grantor's interest, or an absolute conveyance of the land, as the case may be. But its wording may be such as to raise a question whether it is one or the other; and in that event the circumstances under which it is made, and the purposes for which it is made, may be considered, to fix its true character, as being one or the other.

5.  Although in the granting clause of a deed the interest only of the grantor is purported to be conveyed; yet if an adequate consideration is recited, and expressions occur elsewhere in the instrument which might indicate an intention to convey the land itself, the intention of the parties should be ascertained by considering all the provisions of the deed as well as the situation of the parties, and then give effect to that intention if possible.

6.  If upon such consideration, the intention appears to have been to convey the fee simple or any definite estate, effect will be given to such intention, and the deed will operate by way of estoppel, so that any estate subsequently acquired by the grantor will inure to the grantee; and it is not material whether such intention is found in the granting clause, in the covenants, or elsewhere in the deed. Such result may follow without any covenants of warranty whatever.

7.  No deed, whatever its form, passes *by way of conveyance* any greater estate than the grantor has; but if an intention appears to convey a greater estate, and the grantor subsequently acquires such greater estate, he and his privies] will be *estopped* from setting up such after-acquired title against his grantee, and it will inure to the grantee; the result being the same as if the after-acquired title had passed by way of conveyance.

8.  A mortgagor in a mortgage given to secure the payment of $2,000, loaned to him by the mortgagee, had no title or right of possession in the lands, the same belonging to the United States. Afterward, he obtained, by mesne conveyances, the government title. The mortgage conveyed all the right, title, interest, claim, and demand of the grantor in the described lands, and the description was followed by the clause, viz.: "To have and to hold the same, together with all and singular the appurtenances, and privi-

leges thereunto belonging or in anywise appertaining, and all the right, title, interest, and claim whatsoever of the said party of the first part, either in law or equity, to the only proper use, benefit, and behoof of the said second party, his heirs and assigns forever;" and there was a covenant of warranty of the "tracts or parcels of land and premises" against the claims of all persons, save only as noted in an exception of doubtful meaning. *Held*, that the terms of the mortgage strongly indicated an intention to convey the land itself, rather than the mere interest which the grantor then had.

9. A patent ambiguity which can not be explained, and its meaning determined, by reference to the instrument itself, and the situation of the parties, should be rejected.

10. An exception in a covenant of warranty in a mortgage was "saving and excepting the title *to* the government of the United States." *Held*, that in its connection and unexplained, the language was unintelligible, and should be rejected, unless upon trial of the case, the evidence should give it some meaning not supplied by the pleadings.

11. An exception or reservation as broad as the grant should be rejected, and the deed made operative; since the parties will be presumed to have intended the deed to be operative for some purpose.

12. It appearing from a mortgage that the intention was to do something more than to convey a mere chance of title; an interpretation of an ambiguous exception which would exclude from the warranty the only title existing and give the grantee nothing but a chance of title, and thereby make the instrument a meaningless form, should be avoided; and if such interpretation is the only one to which it is subject, the exception should be rejected, and the warranty construed without it.

13. Where action upon the debt is not barred, action to foreclose a mortgage given as security for the debt is not barred.

14. An action to foreclose a mortgage on lands is not affected by the statute limiting the time for bringing actions to recover the title or possession of lands; since the object of a foreclosure action is not the recovery of possession of land, but to realize the debt by selling the security.

15. In view of the system of records prevailing by statute in this State, the statutory provision that conveyances made and recorded as provided by law, shall be notice to

and take precedence of any subsequent purchasers from the time of delivery at the proper office for record, applies to conveyances recorded before as well as after the acquisition of title by the grantor; and, therefore, the rule does not apply and is not in force here, that a grantee is not bound to search the records anterior to the vesting of the legal title in his grantor.

16. A mortgage is not invalidated as against public policy, which is given by one when the title was in the government, where the mortgagor was not the entryman, but obtained his title from persons having patents from the government when they had power to convey; both parties claiming from the mortgagor, and it not appearing that there were any irregularities in the passing of title from the government.

[Decided December 19, 1899.]

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

This was an action brought by the Laramie National Bank, Henry G. Balch and Charles C. Frazer upon certain promissory notes owned by the bank, executed by Thomas Bird, and to foreclose a trust deed given to secure the payment of the notes. The defendant Constantine P. Arnold claimed under a prior mortgage, made to one Frederick Bell, and transferred to said Arnold. After reply and a demurrer thereto, the demurrer was sustained and judgment rendered upon the pleadings in favor of the defendant Arnold. The plaintiffs prosecuted error. The material facts are stated in the opinion.

*Nellis E. Corthell,* for plaintiffs in error.

The mortgagor was not estopped from claiming the after-acquired title, for first, such an estoppel must be reciprocal, and hence the mortgagee would be estopped from claiming anything not conveyed; and, second, the alleged estoppel can only operate to conclude the mortgagor from alleging the truth. The estoppel must be certain to every intent, and not be taken by argument or

inference; and, third, there ought to be a precise affirmation by those claiming of that which makes the estoppel; and, where the facts are apparent in the same record (the mortgage itself) the adverse party is not estopped from taking advantage of the truth. (Coke Litt., 352; Gilmer v. Poindexter, 10 How., 257). If the covenant should be in absolute, unqualified, and unlimited terms of warranty it would not raise an estoppel as to any other estate than that which the mortgage purported to convey. It is a covenant for title; not for quantity, quality or nature of the estate. It is a warrant that the tenure by which the estate is conveyed is the only one existing. Thus far we have considered the covenant as if the exception were not in it. Such a covenant makes a grantor responsible for an undivided half interest if he has only conveyed such an interest. A warranty of itself can not enlarge an estate. (2 Coke Litt., 385 f 19th. ed.) Rawle Cov., 244 et. seq.; 8 Ency. L., 70; 119 U. S., 156; 13 Wall., 418; 1 Saw., 238; 14 F. C., 1014; 7 Fed., 341; 59 Ark., 299; 25 Cal., 452; 94 Cal., 227; 99 Ill , 372; 122 id., 317; 139 Ind., 60; 18 Ia., 17; 105 Ia., 122; 14 Kan., 148; 57 id., 62; 34 Me., 299; 46 Me., 152; 24 Mass., 169; 119 id., 366; 26 N. H., 401; 30 N. J. L., 510; 9 Johns., 106; 11 O. S., 240; 14 id., 339; 35 W. Va., 155; 43 S. W. (Tex.), 50.) Where there is no breach of the covenants or no liability to an action on them, there is no estoppel. (Smiley v. Fries, 104 Ill , 416.) General words in the habendum or subsequent part of the deed can not control words of limitation in the grant or premises. (Hunter v. Patterson (Mo.), 44 S. W., 250.) Where there is a repugnancy between the printed and written clauses the latter must prevail. The court, by its ruling on the demurrer, closed its eyes to and could not enforce that rule. (Davidson v. Manson (Mo.), 48 S. W., 637; Clark v. Woodruff, 83 N. Y., 523; Hill v. Miller, 76 id., 32; Ins. Co. v. De Groff, 12 Mich., 124; Ins. Co. v. Cushaw, 41 id., 59; Schroeder v. Ins. Co., 46 Mo., 174; Blake v. Ins. Co., 12 Gray, 265.) De-

fendant's position involves a repugnancy between the granting clause and the warranty. In such case the doubt should be resolved in favor of the clause first in order of precedence. (Green Bay C. Co. v. Hewett, 55 Wis., 96.)

The real intention of the parties is to be sought, and that is the ultimate object of rules of interpretation. (Howe Studies Civ. L., 119; Lendorf v. Cope, 122 Ill., 317.) An interpretation should be adopted, which will, if possible, give effect to every part of the instrument. What is the meaning of the exception "title to the government"? A saving or exception carves out of the thing granted something which otherwise would be included in it. (Davenport v. Lamb, 13 Wall., 418; Lamb v. Burbank, 14 Fed. Cas., 989; Lamb v. Kamm, id., 1044; Lamb v. Wakefield, id., 1040; Fields v. Squires, Deady, 366.) A general warranty imports that the grantor will warrant and defend the title conveyed. In that sense the word has been applied indifferently to a warranty of the "premises" or of the "tract or parcel of land." (Holmes v. Danforth (Me.), 21 Atl., 845; Smith v. Hughes, 50 Wis., 620.) Purchasers are not required to search back of the time when their grantor acquired his title. (Bingham v. Kirkland, 34 N. J. E., 229; Calder v. Chapman, 52 Pa. St., 359; Farmer's L. & T. Co., 8 id., 361; Le Neve v. Le Neve, 2 Lead. Cas. in Eq., 211; Dodd v. Williams, 3 Mo. App., 278; Way v. Arnold, 18 Ga., 181; Faircloth v. Jordan, 18 Ga., 352.)

If Bird could not have contracted to procure and convey the title then held by the government, he could not be bound to such an obligation by implication merely.

If the warranty is to be construed as contended for by the defendant it would be void as against public policy. (Anderson v. Carkins, 135 U. S., 483; McCrillis v. Copp (Fla.), 12 So., 643; Oaks v. Heaton, 44 Ia., 116; Nichols v. Council, 51 Ark., 26; Hebart v. Brown, 65 Fed., 2;

Mellison v. Allen, 30 Kan., 382; Blake v. Ballou, 19 Kan., 397; Biddle v. Adams, 5 Kan. App., 734; Mc Cue v. Smith, 9 Mind., 252.) The mortgage should be rather held to be a conveyance of possessory right to public lands as authorized by our statutes. (R. S., § 76; Cooper v. Hunter (Colo.), 44 Pac., 944.) Action upon the mortgage was barred. (R. S., § 2366; id., 2374; Brinkerhoff v. Bostwick, 99 N. Y., 185.) Payment of interest by the mortgagor could not keep the statute from running as against subsequent incumbrancers or holder of the equity of redemption. Payment suspends the statute only as to the person making the payment. (Wood v. Goodfellow, 43 Colo., 185; Lord v. Morris, 18 Cal., 482; Mc Carthy v. White, 21 id., 495; Lent v. Morrill, 25 id., 500; Barber v. Babel, 36 id., 11; Sichell v. Corillo, 42 id., 493; Watt v. Wright, 66 id., 202; Cottrell v. Shepherd (Wis.), 57 N. W., 985; Wyman v. Russell, 4 Biss., 307; Day v. Baldwin, 34 Ia., 380; Arthur v. Screven (S. C.), 17 S. E., 640; R. S., § 2381; Cowhick v. Shingle, 5 Wyo., 96.)

*C. P. Arnold*, for defendant in error.

The intimation of counsel for plaintiffs in error that the demurrer ought to have been overruled, as proof might reach beyond the allegations, and that surrounding circumstances might furnish assistance to plaintiff, is untenable. The mortgage is set out in the pleadings, and the only light the trial court had and this court can have is the recitals of the mortgage. If there were such surrounding circumstances it was the duty of plaintiffs to have amended their reply if they desired to show them. In construing the mortgage the court is to understand the situation of the parties, and to ascertain the intention rather than to regard particular words. (Ford v. Beech, 11 Q. B., 866; Field v. Leiter, 118 Ill., 17; Noyes v. Nichols, 28 Vt., 159; Devlin on Deeds, Vol. 2, 835.) The whole writing should be considered. Every word is to be presumed as used for some purpose. (Parsons Cont., Vol. 2, § 502

Salisbury v. Andrews, 19 Pick., 250.)  In case of doubt, the practical interpretation put upon the instrument by the parties is entitled to great weight.  (Topliff v. Topliff, 122 U. S., 121.)  Exceptions in a deed are taken favorably for the grantee.  (Devlin on Deeds, Sec. 848; Am. Surety Co. v. Pareley, 170 U. S., 161.)  The meaning of the exception quite clearly is that as the title was at the time in the government the grantor would not warrant against the government, but said that when the government should part with its title the grantor would then defend the grantee's right to the land.  He did not except the title *of* the government, for that was the only title there was; he only excepted the title *to* the government — that is — the title so long as it remains in the government.  It means that or nothing.  A construction should not be adopted which makes the agreement an absurdity, and to mean nothing.  Again, to make the warranty good, the grantor does buy the land after the government has parted with its title, and before the plaintiffs acquired their sub-ordinate lien.  That act shows how the grantor regarded his mortgage and his covenant.

The rule relied on as to notice by the record, does not prevail in this State.  The recording acts expressly cover mortgages upon lands before the acquisition of title by the grantor.  (R. S., Secs; 76, 1414, 1419.)  If one without title mortgages land with covenants and the mortgage is recorded, and the mortgagor afterward acquires title, the mortgage gives priority over a subsequent purchaser in good faith.  (Degman v. McCollum, 47 Mo., 372; Tefft v. Munson, 57 N. Y., 97; Philly v. Saunders, 11 O. St., 490; Douglas v. Scott, 5 O., 195; Crane v. Turner, 67 N. Y., 437; 2 Devlin on Deeds, § 721; 11 Ency. L., 2d ed., 416.)  No public policy was encroached upon by the mortgage.  (Hope v. Stone, 10 Minn., 141; Trenton v. Fidelity Co. (Ore.), 56 Pac., 1096; Norris v. Heald (Mont.), 29 Pac., 1121; Phelps v. Kellogg, 15 Ill., 231.)  A mortgage is valid and may be foreclosed as long as the debt which it secures is not barred by the statute.  (Wiltsie

on Mort. Forec., 55, 64, 410; Jones on Mort., Vol. 2, 1202; Hughes v. Edwards, 9 Wheat., 489; Bank v. Woodman (Ia.), 62 N. W., 28; Cook v. Prendle, 63 N. W., 188; Brown v. Rockhold, 46 Ia., 282; Kerudt v. Porterfield (Ia.) 9 N. W., 322; Harris v. Mills, 28 Ill., 44; McMillan v. McCormick, 117 Ill., 79; Medley v. Elliott, 62 Ill., 533.

CORN, JUSTICE.

This was a suit upon certain promissory notes owned by the bank and executed by Thomas Bird, one of the defendants in the court below, and to foreclose a mortgage and a trust deed upon certain lands by which the notes were secured. The defendant, Arnold, answered, setting up a promissory note of the defendant Bird for the sum of two thousand dollars, made payable to Frederick Bell, now owned by Arnold and secured by mortgage upon the same lands covered by the mortgage and trust deed of the plaintiffs. The Arnold note and mortgage were executed on October 15, 1883, and the mortgage recorded upon the same day, being prior in time to the indebtedness sued on by plaintiffs. The granting clause of the last-named mortgage recites a consideration of one dollar and proceeds that the party of the first part "has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey and confirm unto the said party of the second part, his heirs and assigns forever, all the right, title, interest, claim, and demand which the said party of the first part has in and to the following-described lots of land, situate," etc. It further proceeds "to have and to hold the same, together with all and singular the appurtenances and privileges thereunto belonging, or in anywise thereunto appertaining, and all the right, title, interest, and claim whatsoever of the said party of the first part, either in law or equity, to the only proper use, benefit, and behoof of the said second party, his heirs and assigns forever. And the said party of the first part the aforesaid tracts and parcels of land and premises unto the said party of the

second part, his heirs and assigns, against the claim or claims of all and every person whatsoever, saving and excepting the title to the government of the United States, do and will warrant and forever defend by these presents." Then follows the condition that the deed is to be void upon the payment by the grantor of the two thousand dollars with interest, as specified in his note. The plaintiff replied, denying that Thomas Bird by his mortgage to Frederick Bell conveyed to him the lands described, or any part thereof; and alleging that "the defendant, Thomas Bird, at the time of the execution of said mortgage deed, had no right, title, interest, claim, or demand therein or thereto, save only the naked possession of a portion of said lands; that the title to said lands at the time last aforesaid was vested in the government of the United States, which was the owner in fee simple of all of said lands, and entitled to the possession of the same;" further alleging "that in and by the terms of the said mortgage deed, the said title of the government of the United States was expressly saved, excepted, and reserved from grant or conveyance;" and alleging further that subsequent to the execution of the mortgage of Bird to Bell, and prior to the execution of the conveyances by Bird to plaintiffs' grantors, the government of the United States, under the provisions of the desert land act, granted the lands in question to various parties, who in turn, and prior to the conveyances under which plaintiffs claim, conveyed the same to Thomas Bird. The plaintiffs in their reply further "deny that the claim and interest alleged by them in the petition herein are in any respect subsequent or subordinate to the alleged right, title, interest, and claim set up in the answer of the said defendant, in and to the lands and tenements described in the petition herein, or any part thereof, and deny that the alleged claim and lien of the said defendant is prior or superior to the lien of the plaintiffs." The plaintiffs also pleaded in their reply the statute of limitations as to defendant's mortgage. Thomas Bird, Julia A. Bird, and

George Bridge, who were made defendants in the action, made no defense, and their default was entered. The defendant, Arnold, demurred to each count of the reply upon the ground that it was insufficient in law. The demurrer was sustained, and the plaintiffs having no further reply to make, the court rendered judgment upon the pleadings that the Arnold mortgage was the superior lien.

The precise question presented for our decision by this record, whether the demurrer to the reply was properly sustained, must, as we view it, be disposed of, as to the first count, by a very brief discussion. The decision asked for by the demurrer necessarily involved a construction of the Arnold or Bell mortgage. And the object of such construction must be to ascertain the intention of the parties; first, by an inspection of the deed itself, not only so far as would enable the trial court to inform itself of the language employed, but also to ascertain if upon the face of the original instrument anything appeared which would serve to illustrate such intention; and second, by hearing any competent evidence which might be offered tending to inform the trial court of the situation of the parties at the time the instrument was executed as further illustrating the intention of the parties at the time. The rule of construction is, that while direct evidence of intention is not admissible in explanation of ambiguous terms in a writing, yet proof of collateral facts and surrounding circumstances existing when the instrument was made, may be properly admitted in order that the court may be placed as nearly as possible in the situation of the contracting parties, as the case may be, with a view the better to adjudge in what sense the language of the instrument was intended to be used, and to apply it to the subject matter. 2 Am. and Eng. Enc., 291. As the sustaining of the demurrer denied to the plaintiff the right to introduce such evidence, and was based upon a copy only of the instrument, we think the demurrer should have been overruled.

But in the presentation of the case all, or substantially all, of the questions involved have been argued by counsel and considered by this court; a reargument of them at any time would impose needless labor upon court and counsel, and a decision of them within the limitations of the rule above stated seems to be necessary and proper at this time.   It is admitted for the purposes of the hearing upon the demurrer that, at the time the Arnold mortgage was executed, the grantor, Bird, had only the naked possession of a portion of the land described, and that the title and right of possession were in the government of the United States.   As by the granting clause of the deed the grantor conveyed only his right, title, and interest, the plaintiffs in error contend that nothing whatever passed by virtue of it; that the title of the United States is expressly excepted from the operation of the covenants, and therefore when such title was afterward acquired by Bird it would not inure to Frederick Bell or his assigns. The defendant in error upon the other hand contends that the language of the exception contained in the warranty, "Saving and excepting the title to the government of the United States," does not except the title of government, which was the only title, but must be construed under the circumstances as simply a refusal upon the part of the grantor to warrant in case the government itself should assert its ownership and right of possession, which title within the knowledge of both grantor and grantee, could not be disputed.

If the instrument in question came strictly within the definition of what are commonly called quit claim deeds, there would be no difficulty in determining what passed by its provisions.   Such deeds contain no covenants, and do not purport to convey anything more than the interest of the grantor at the time of their execution, and there is no legitimate inference from the terms of the instrument that the grantor has any definite estate, and indeed no necessary inference that he has any interest at all in the lands described; and it is well settled that nothing passes

but his right, title, and interest at the time of the execution of the deed, and no after-acquired title will inure to the grantee. Where, however, as in this case, though the granting clause is quit claim in form, there are expressions in other parts of the instrument which indicate an intention to do more than merely release to the grantee any claim which the grantor may have, or may be supposed to have, in the premises, there is more difficulty in construction.

A deed may be so plain and explicit as to require the court to construe it to be a quit claim of the grantor's interest or an absolute conveyance of the land, as the case may be. But upon the other hand its wording may be such as to raise a question whether it is the one or the other, and in that event the circumstances under which it is made and the purposes for which it is made may be considered to fix its true character as being the one or the other. Van Rensselaer v. Kearney, 11 How., 522; Harrison v. Boring, 44 Tex., 263. If the deed is not only quit claim in form, but it appears that the consideration was merely nominal, it may ordinarily be inferred that the purpose of the deed was only to release the existing interest of the grantor for the purpose of clearing the title or the like. If upon the other hand, though in the granting clause, only the right, title, and interest of the grantor is purported to be conveyed, yet if an adequate consideration is recited, and if expressions occur elsewhere in the instrument indicating an intention to convey the land itself, such a construction can not be so readily adopted. The rule in such cases is that the intention of the parties is to be ascertained by considering all the provisions of the deed as well as the situation of the parties, and then to give effect to such intention if practicable. 2 Devlin on Deeds, Sec. 836. If upon such consideration it appears that the intention of the parties was to convey the fee simple or any definite estate in the land, effect will be given to such intention and the deed will operate by way of estoppel so that any estate subsequently

acquired by the grantor will inure to the grantee.   And it is not material whether such intention appears by the granting clause, in the covenants, or elsewhere in the instrument.   And this result may be produced even in the absence of any warranty whatever.   Hannon v. Christopher 34 N. J. Eq., 465; Shoenberger v. Lyon, 7 W. & S., 192; Lindsay v. Freeman, 83 Tex., 265.   As said in Van Rensselear v. Kearney supra, " and therefore if the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then although it may not contain any covenants of title in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterward denying that he was seized of the particular estate at the time of the conveyance."

In this case it appears from the pleadings, and is admitted by the demurrer, that the consideration of the mortgage was $2,000 received by Bird from Bell; that Bird had no title or interest in the lands whatever, nor any possessory right, the title and the right of possession being in the United States.   That as security for the sum received, Bird executed the instrument in question.   That subsequently to its execution, and prior to the conveyance to plaintiff's grantors, Bird obtained title by mense conveyances from the United States.   Searching then under these circumstances for the intention of the parties, as expressed in the deed, it sufficiently appears that something more was intended than a mere release of some imaginary or possible interest of the grantor.   For, in the first place, by the habendum, the grantee was to have, not only the right, title, and interest of the grantor, but was to have and to hold the same, together with all and singular the

appurtenances and privileges thereunto belonging or in anywise thereto appertaining, *and* all the right, title, interest, and claim whatsoever of the party of the first part either in law or equity, to the only proper use, benefit, and behoof of the said second party, his heirs and assigns forever.'' This language, while obscure, when taken in connection with the granting clause, is inconsistent with an intention to release only the right, title, and interest of the grantor, whether small or great, or nothing at all. Language, certainly not more significant, has been held to show the clear intention of the parties to convey the land itself, and not simply to quit claim. In Garrett v. Christopher, 74 Tex., 454, the court says: ''The language of the deed now under consideration is: 'Do by these presents sell, convey, remise, release, and quit claim unto the said (grantee) his heirs and assigns forever, all our right, title, claim, interest, and demand in and to and for ' the land, describing it. Had the deed stopped here and contained no language indicating a different intent, we would be constrained to hold that it is quit claim and conveyed only the vendor's chance of title instead of the land. In immediate connection with the language just quoted the deed contains the following: ' To have and to hold the above-described premises unto the said (grantee) his heirs and assigns forever.' From this language we think it quite clear that the parties intended by this instrument to convey the land itself, and that it is not simply a quit claim deed.'' But the deed in this case contains additional and much stronger evidence that it was the intention of the parties that the land itself, and not merely the '' chance of title '' of the grantor, should be conveyed. For, by the language immediately following, the grantor proceeds to covenant that he will warrant and defend, not only the premises or the interest of the grantor, but the ''tracts or parcels of land *and* premises,'' against the claims of all persons save only as noted in the exception before referred to, and out of which the principal controversy arises between the parties to this suit. It is clear,

unless this language is entirely meaningless, that the parties to the deed intended that the lands themselves should pass to the grantee, and that the grantor warranted as to them against the claims of all persons save only as noted in the exception.

But the plaintiffs contend that the title and right of possession being in the government, and the grantor having no right, title, or interest whatever, nothing passed by the conveyance to the grantee, and that a warranty can not enlarge the estate conveyed. In the strict sense this is entirely true. It is also true that no conveyance, whatever its form, whether a strictly quit claim deed or a deed of bargain and sale with full covenants of warranty, can or does pass by way of conveyance any greater estate than that possessed by the grantor at the time of the execution of the conveyance; and no after-acquired title can pass by way of conveyance, no matter what the provisions of the instrument. Pennock v. Coe, 23 How., 128; R. Wy. Co. v. Cowdray, 11 Wall., 481. But it is here the doctrine of estoppel is applied, and the result may be the same as if the after-acquired title had passed by the conveyance. And the principle that the warranty can not enlarge the estate conveyed, does not prevent an examination of all the terms of the deed in order to ascertain the intention of the parties. So that if from such examination it appears that it was their intention that a greater estate should pass, and the grantor subsequently acquires such greater estate, he and his privies will be estopped by his deed from setting up such after-acquired title against his grantee, and it will, in this way, inure to the grantee.

Herein also lies the fallacy of plaintiff's application of the principle that the estoppel must be reciprocal. Plaintiff contends that when it is argued that the grantor is estopped by his mortgage from afterward claiming anything which he had conveyed by it, the answer is that such an estoppel must be reciprocal, and the mortgagee be, therefore, concluded from claiming anything which was not conveyed. The estoppel is not only that he shall not

claim that which he has conveyed, but that he shall not claim that which by the terms of his deed the grantee was to receive, though, as conceded by all parties, nothing whatever was conveyed, because the grantor had nothing to convey.

We think, therefore, in order to reach a correct construction of the instrument, the essential thing is to determine the effect in their connection of the words "saving and excepting the title to the government of the United States." In view of the language itself, the other terms of the instrument, the situation of the parties to the deed (including the investment of the substantial sum of two thousand dollars by the grantee upon the faith of its provisions), and the total inability of counsel to agree upon its meaning, it seems safe to say that the expression constitutes an ambiguity upon the face of the instrument. It seems reasonable to suppose if it was intended simply to except the outstanding title—the title of the United States—that the parties would have used the simple word properly and plainly expressing that intention. We are not at liberty to give to the expression a meaning which the words themselves do not convey, unless it is made necessary by the context and the surrounding circumstances. We might adopt the supposition that it is merely a loose and inaccurate expression by which the parties intended to express that intention. But it would be merely a conjecture, and it would be as natural, perhaps more so under the circumstances, to conjecture some other meaning. Where a covenant was that if the grantors should obtain the fee simple "from" the United States, they would convey the same to the grantee, the Supreme Court of the United States refused to interpret the expression as meaning the title "of" the government, but held that the covenant did not operate unless the title was obtained directly from the United States by the grantors or their heirs. Davenport v. Lamb, 13 Wall., 430. The preposition "to" generally indicates direction, and an agreement to convey title "to" the government would be plain. It indicates

direction toward as plainly as "from" indicates direction away from. It is meaningless, however, if used in that sense here. The words "title to" also have a well understood meaning when followed by the word "property," "land," or the like, meaning ownership of the land or property. But we know of no circumstances under which the expression can be correctly or even intelligibly used as describing the title of the owner. Appearing upon the face of the instrument, it is what is termed a patent ambiguity, and the rule is well settled that only the instrument itself and the situation of the parties can be examined, and direct evidence of their intention is not admissible to explain it. If upon such examination its meaning can not be determined, it must be rejected.

Where a promissory note read "one day after date we promise to pay (payee) four hundred and fifty six dollars for value received, ten per cent," the court held that the words "ten per cent" in their connection might be supposed to have any one of several meanings; and they say: "We may as readily infer one as another of these suppositions, unless we could resort to extrinsic evidence, which is not admissible. It is a patent ambiguity, and as such is not capable of explanation, and to admit parol evidence would vary or alter a written contract already complete and definite. This ambiguity appears in the note, and it affords no explanation. It must therefore be rejected as surplusage, and as having no meaning." Griffith v. Furry, 30 Ill., 255. We are forced to the conclusion that the language in its connection and unexplained, is unintelligible, and unless upon a trial of the cause the evidence of the situation of the parties and the surrounding circumstances should give it some meaning not supplied by the statements of the pleadings, that it must be rejected.

But if the language could be fairly construed to mean broadly that the title of the government was excluded from the operation of the deed, under the pleadings and under the conditions as recognized and fully admitted by all parties to the controversy, we are unable to perceive

that the result would be different. It is a well-settled rule that if an exception or reservation is as broad as the grant, the reservation or exception will be rejected and the deed will be operative. The reason of the rule is that the parties are presumed to have intended that the instrument should be operative for some purpose or they would not have made it. An exception, therefore, which makes the grant a nullity is properly rejected. Devlin on Deeds, Sec. 838.

Thus where land was conveyed with a reservation of the iron ore, and the only interest of the grantor in the land was the iron ore, the reservation was rejected. And the court, by Gibson, C. J., say: "A reservation being an exception out of the thing granted, keeps the thing reserved from passing; and unless it were smaller than the thing granted nothing would pass, so that the grant would be void. But the law presumes that the grantor intended that his conveyance should take effect, and it gives effect to it in the only way it can, by disregarding the reservation." Shoenberger v. Lyon, 7 W. & S., 194. The reason of the rule, we think, applies equally in this case. There appears from the instrument an evident intention to do something more than to give to the grantee as security for his loan the mere "chance of title" of the grantor. While to interpret the exception as excluding entirely from the warranty the outstanding title would reduce it to merely that, and make the deed a meaningless form without purpose or effect. We think the exception must be rejected and the warranty construed without it.

The only other question in the case is the application of the statutes of limitation. It is conceded that, by reason of payments and a new promise, the Bell or Arnold note is not barred. But it is contended that the fact of payments or a new promise does not have the effect to keep alive or preserve the remedy upon the mortgage. It has been frequently held that, though the note is barred, the mortgage may still be foreclosed and the proceeds of the mortgage property applied to the payment of the note.

It is argued that this conclusion can be reached only by treating the note and the mortgage as distinct causes of action, each being affected by the section of the statute applicable to itself, and that the converse of the proposition is therefore true.    That is, if, though the note is barred, the right of action upon the mortgage survives because the section barring it has not run, therefore when the section has run, the right of action upon the mortgage is barred, though there still may be a right of recovery upon the note.    But even if it be true that in actions like the present, to enforce collection of the note by foreclosing upon the property, the mortgage is to be deemed a separate and distinct cause of action, we do not think the conclusion follows.    The statute relied upon provides that an action for the recovery of the title or possession of lands can only be brought within ten years after the cause of such action accrues.    The mortgagor in possession does not hold adversely to the mortgagee so long as the relation of mortgagor and mortgagee exists, and no cause of action accrues until such possession becomes adverse. Chauteau v. Riddle, 110 Mo., 372; Bacon v. McIntire, 8 Met., 90.    And to make the possession adverse, there must be a renunciation or disclaimer of the mortgagee's right.    State v. Connor, 69 Ala., 212; 1 A. & E., Enc., 246.    It being admitted in this case that there have been payments and a new promise within ten years, there is no ground whatever for any claim that the mortgagor's possession has been adverse for the statutory period, and indeed, no such claim is made.    But independently of this view, it is, we think, uniformly held, even in jurisdictions where an action of ejectment will lie for the possession of the mortgaged premises by the mortgagee, that the mortgage is but an incident to the debt.    And we think the reasonable and logical conclusion is that the mortgage is only barred when the debt is barred.    Whether under our statute, the debt being barred, it might occur that a recovery could be had under the mortgage, it is not necessary for us to decide or consider in this case.    The instrument was

executed, not to transfer the title or possession of the lands, but to secure the payment of the debt. And the object of the action to foreclose is not the recovery of the possession of the land, but to realize the amount of the indebtedness by selling the security. The contract of the parties was, that the deed should become void upon the payment of the debt. Until it is paid, and as long as the mortgagee has a subsisting right of action for its recovery, his security should be, and is, available, unless the law has otherwise provided. Our statute has not otherwise provided in terms, and no such inference can reasonably be drawn from the section which limits the time within which suit may be brought for the recovery of the possession of lands. Clinton Co. v. Cox, 37 Iowa, 570; Hughes v. Edwards, 9 Wheat, 489; Medley v. Elliott, 62 Ill., 533.

But it is insisted that even if the grantor, Bird, was estopped by his mortgage from asserting his after-acquired title, it does not follow that purchasers from him after he had acquired the title would likewise be estopped; that the record of the Bell mortgage prior to the acquisition of the government title was not notice to the grantees in the later mortgage, it not being the spirit of our recording acts that such purchasers are to be required to search back of the time when their grantor acquired his title. It is true the weight of authority seems to be that under the recording acts of most of the States "a purchaser is not charged with constructive notice of deeds made by his grantor before he acquired title." Devlin on Deeds, 724. And it is said that "to hold otherwise, by imposing upon a subsequent purchaser the duty of examining the records indefinitely, would militate against the practical advantages of the recording system." 20 Am. & Eng. Enc., 597. The reason of the rule is, as stated, that the subsequent grantee is under no obligation to search the records in point of time anterior to the vesting of the legal title in his grantor, that the duty should not be imposed on him of examining the records indefinitely.

The rule, however, can not be applied in a case like this, where both mortgagees claim title from the same grantor, and where, as in this State, the register of deeds is required to keep a cross index of all instruments affecting real estate entering the names of grantors and grantees in alphabetical order. Edwards v. Mc Kernan, 55 Mich., 527. To examine such index under the proper letter for the name of his grantor for a limited period could scarcely be said to impose on the purchaser the duty of examining the records indefinitely. But examining our statute further, the reason disappears completely. In each county abstract books are required to be kept, in which the register of deeds must enter an abstract of every such instrument left for record, under head lines describing the legal subdivisions of land according to the United States surveys. Such abstract must contain the description of the premises, character and date of the instrument, names of the parties, etc. These abstract books are open to the inspection of every person desiring to examine them, so that one interested in any tract of land may turn to the proper page of the abstract and find, almost at a glance, a description of every instrument in which it is referred to, whether anterior or subsequent to the vesting of the legal title in his grantor. Ordinarily in this State, where transfers are not numerous, the examination need only extend to a part of a single page, and, in the present case, it would seem there were but three entries to be examined as to each tract, the patent, the transfer to Bird, and the mortgage to Bell. In the light of these provisions, the words of the statute that "each and every such deed, mortgage, or conveyance, touching any interest in lands, made and recorded according to the provisions of this chapter, shall be notice to, and take precedence of, any subsequent purchaser or purchasers from the time of delivering said instrument at the office of the register of deeds for record," can not be held to apply only to conveyances recorded subsequent to the acquisition of title by the purchaser's grantor. The failure under such circum-

stances to search further than the vesting of the legal title in the purchaser's grantor would be such inexcusable negligence as to amount to a willful refusal to receive any information as to the rights or interests of other claimants.

We do not find in the record any facts which would invalidate the Bell mortgage upon grounds of public policy. We are cited to a number of cases in which such instruments executed by persons entering land under the homestead or other acts of Congress, and by which they undertook to encumber such lands prior to obtaining title thereto from the government, have been held to be void. And it is well settled that it is the policy of those laws, as shown by the affidavits required before a patent shall issue, that the title of the government shall come to the entryman unencumbered. But nothing appears in this case which trenches upon that policy or seems to be in violation or evasion of those laws. Bird's title is not in controversy. He was not an entryman under any of those acts. He obtained title by deed from persons who had patents from the United States and when they had full power to convey. It does not appear that there were any irregularities in obtaining title from the government, or in the transfers to Bird, but both parties to this controversy derive their title from him. If there was any fraud upon the government, it does not at all appear how the transaction between Bird and Bell could have been involved in it.

The demurrer was properly sustained as to the second count of the reply setting up the defense of the statute of limitations. But, while the case as set out in the pleadings is strongly persuasive that a trial of the cause must result in the same conclusion as to the rights of the parties, we are of the opinion that the other questions could not properly be determined upon the demurrer. The judgment of the court will therefore be reversed, and the cause remanded for trial in accordance with the views herein expressed. *Reversed.*

POTTER, C. J., AND KNIGHT, J., concur.