## TENDOLLE, ET AL. v. EUREKA OIL SYNDICATE, ET AL.

(No. 1457; June 6, 1928; 268 Pac. 185)

*C. A. Zaring* and *H. J. Coleman,* and *Dillon, Ellery & Spencer,* for plaintiffs in error.

444

*Paul R. Greever* and *H. C. Brome,* for defendants in error.

KIMBALL, Justice.

Henry Tendolle and J. B. Henderson, plaintiffs, by their action against Eureka Oil Syndicate and W. O. Taylor, defendants, sought to cancel a deed and quiet title to an interest in the oil and gas in lands controlled by the Federal Leasing Act of February 25, 1920 (41 Stat. 437). The judgment in the trial court was for the defendants, and plaintiffs bring the case here on error.

June 15, 1921, plaintiff Tendolle, then being an agricultural entryman entitled to a preference right to a permit and lease under Section 20 of the leasing act (41 Stat. 445), filed in the United States Land Office his application for an oil and gas prospecting permit. June 13, 1921, it was agreed in writing between Tendolle and one Savage that Savage, on the issuance of the permit, would drill the lands for oil and gas and, if oil or gas was discovered, Savage was to receive 87½ and Tendolle 12½ per cent thereof, the government royalty to be paid from Savage's portion.

September 17, 1921, Tendolle executed and delivered to defendant Taylor the deed in question in the case. We quote the material provisions of that instrument:

"DEED TO AN UNDIVIDED INTEREST IN OIL, GAS AND OTHER MINERALS.

"THIS INDENTURE, Made this 17th day of September, A. D. 1921, between Henry Tendolle, of Powell, Park County, Wyoming, the party of the first part, (whether one or more) and W. O. Taylor, of Billings, Montana, the party of the second part.

"WITNESSETH: That the said party of the first part, for and in consideration of the sum of One Dollar ($1.00) to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, release and forever quit claim unto the said party of the second part and to his heirs and assigns forever an undivided 3½% Royalty interest in and to all of the oil, gas and other minerals

whatsoever in and under the following described land situate in Park County, State of Wyoming, to-wit:

(Here follows description of the land by legal subdivisions.)

"Together with the rights of ingress and egress at all times for the purpose of mining, drilling, and exploring said land, for oil, gas and other minerals, and removing the same therefrom, and any and all rights and privileges necessary, incident to, or convenient for the economical operation of said land for such purpose.

"TO HAVE AND TO HOLD all and singular said premises, together with the appurtenances and privileges thereto incident unto the said party of the second part, his heirs and assigns forever.

"If such land is covered by a valid oil and gas or other mineral lease, the party of the second part, his heirs and assigns, by this instrument shall have an undivided 3½% interest in the Royalties, Rental, and Proceeds therefrom, of whatsoever nature."

This deed was recorded in the office of the County Clerk of Park County, September 19, 1921.

February 7, 1922, an oil and gas prospecting permit under Section 20 of the leasing act was granted to Tendolle, and May 9, 1922, there was issued to him under the homestead law a patent to the lands reserving to the United States the oil and gas. The lands were explored under the permit by the sinking of a well by Savage and associates acting under the contract of June 13, 1921. In April, 1926, oil was discovered.

The interest obtained by Taylor by the deed of September 17, 1921, has been transferred by him to the defendant Eureka Oil Syndicate, a so-called "common law trust," of which Taylor and two others are trustees. Tendolle has transferred to others all his oil and gas rights except a one-fourth of one per cent interest. A 3¼ per cent interest he transferred to J. B. Henderson, the other plaintiff. The two plaintiffs claimed that the sum of their interests was the same interest claimed by the Eureka Oil

Syndicate under the deeds from Tendolle to Taylor and from Taylor to the syndicate.

To avoid the deed of September 17, 1921, from Tendolle to Taylor, the plaintiffs claimed that it was obtained by fraud. There is a suggestion by defendants that plaintiff Henderson, as the grantee of Tendolle, had no right to raise the issue of fraud, and that in any event the transfer from Tendolle to Taylor could be set aside so far only as it effects the royalty interest owned by Tendolle at the time of the commencement of the action. That point need not be decided.

The petition alleged in substance that Taylor represented to Tendolle that Savage would be unable to perform his contract to drill under the permit; that he (Taylor) was willing to perform in place of Savage in consideration of a 1½ per cent royalty interest; that Tendolle signed the deed of September 17 without knowing its contents, but believing, on the representations of Taylor, that it was a contract to give Taylor a 1½ per cent royalty interest in consideration of Taylor's promise to protect Tendolle in his rights, and that there was no consideration for the deed. These allegations were supported at the trial by the testimony of plaintiff Tendolle.

The defendant Taylor as a witness denied the testimony of Tendolle on all material matters. Taylor testified that he was representing the Eureka Oil Syndicate, a company or association engaged in the business of buying and holding royalty interests in oil and gas production; that he approached Tendolle for the purpose of buying such a royalty, and after explaining the objects of the syndicate, offered to give 500 shares of its stock for the interest in question, with the further promise to give Tendolle $1,000 in cash if oil should be discovered on an adjoining tract that was then being or about to be drilled, it being understood that the interest obtained from Tendolle would become the property of the syndicate; that

the offer was accepted by Tendolle, and the deed signed and delivered without any misrepresentation or misunderstanding; that he gave Tendolle $5 at the time the contract was orally agreed upon, and $5 more when the deed was delivered. Taylor testified that the certificate for the 500 shares of stock of the Eureka Oil Syndicate was prepared and mailed to Tendolle about a week after the delivery of the deed; that it was not delivered, but returned because unclaimed at the post office to which it was addressed. Later, Tendolle refused to accept the certificate. It does not appear that the $1,000, which Taylor claimed was promised conditionally, ever became due. Taylor's testimony was corroborated in some important particulars by other persons who were present at the time the bargain was made and by the notary before whom the deed was acknowledged. There is nothing in the evidence to show the value of the royalty interest in question or of the stock of the Eureka Oil Syndicate at the time of the transaction.

We deem it unnecessary to recite the facts in more detail, or to discuss the contentions in regard to the credibility of the witnesses. If it be conceded that plaintiff's evidence was sufficient to show that the deed was obtained by fraud, it must also be conceded that the evidence of fraud was contradicted by substantial evidence, so that the finding for defendants is a decision on conflicting evidence of a question of fact, which, under familiar principles, will not be disturbed by this court. In deciding the other questions in the case, we must consider that the findings of the trial court on the facts establishes that the deed was obtained without fraud and for an adequate consideration.

The plaintiffs claim that the defendants did not acquire the right in question by the deed of September 17, 1921. It is conceded that a deed is the proper instrument for transferring an interest in minerals in land. It is contend-

ed, however, by plaintiffs, that the deed in question was merely a quit claim or, at most, a deed of bargain and sale without warranty or other covenant, and conveyed only the right that the grantor then had; that he then had no legal or equitable right to the oil in the land, and the interests he afterwards obtained did not pass either by virture of the conveyance or by estoppel.

At the time of giving the deed, the right that Tendolle had was a right to the permit on his application then on file in the Land Office. If, in the exercise of his rights under the permit, oil should be discovered and taken out, he then would have a right to the oil less the royalty due the United States. Before that time, his interest in the oil underlying the land was inchoate or imperfect, but it does not seem to be contended that any provision of the leasing law or the regulations thereunder or any principle of public policy forbade a conveyance or assignment of the interest before discovery. It is provided by Section 12½ of the departmental regulations that "mere rights to receive a permit are not assignable." Tendolle, in the case at bar, did not by his deed attempt to assign his right to the permit.

Section 4617, W. C. S. 1920, provides that a quit-claim deed may be substantially in the form therein set forth. By the granting clause of this statutory form deed the grantor "conveys and quit-claims" to the grantee "all interest" in the described real estate. Section 4618 provides that every deed in substance in the form prescribed by Section 4617, shall be deemed and held a sufficient conveyance, release and quit-claim of all legal and equitable rights of the grantor at the time of the execution and delivery of the deed, "but shall not extend to after acquired title unless words are added expressing such intention." To make these statutes controlling for the benefit of the plaintiffs in the case at bar, it would have to appear that the deed in question is a quit-claim. We do not think the

deed is a mere quit-claim. While the granting clause uses words appropriate for a quit-claim, it also uses the words ''grant, bargain, sell.'' The words of grant are not in our opinion so important as the fact that the deed purports to transfer a definite, specific interest. The property about which the parties were contracting was $3\frac{1}{2}$ per cent of the minerals in a certain tract of land. The deed does not purport to convey merely the grantor's interest in that property, but the property itself, and if it be necessary to give the deed a name, we would call it a deed of bargain and sale, and not of quit-claim. We need not inquire whether the words ''after acquired title,'' as used in the statute, include a title which the grantor is in process of obtaining.

But the plaintiffs' contentions are not disposed of by saying that the deed is one of bargain and sale instead of a quit-claim. Many authorities are cited in support of the view that neither a deed of bargain and sale, nor any other of our modern conveyances, operates to pass future interests by virtue of the conveyance; and that the only way such an object can be effected is by the introduction of some appropriate covenant, or of a recital that will create an estoppel. See Bigelow on Estoppel, (6th Ed.) 464; Balch v. Arnold, 9 Wyo. 17, 32, 59 Pac. 434. The principle of such authorities does not interfere with the operation of the doctrine of relation so often applied in cases where the entryman of public lands gives a deed thereto before obtaining a patent from the government. This doctrine of relation is fully explained in Roberts v. Hudson, 25 Wyo. 505, 173 Pac. 786, and cases there cited. When it becomes necessary in furtherance of justice, a transfer of title that is the result of several steps or transactions is held to take effect by relation from the first substantive act. Note, 15 Am. Dec. 253. The patent, which is the consummation of title, in equity relates back to the entry which is the inception of title. Taylor v. Brown,

5 Cranch, 234, 253, 3 L. Ed. 88. We think the doctrine is applicable in the case at bar. Tendolle acquired a legal right to the oil when it was discovered and reduced to possession. The perfect, legal right was the result of several successive steps. The inception of title was at least as early as the date of the filing of the application for a permit (Heryford v. Brown, 49 L. D. 248), and the legal right subsequently acquired must be held to take effect by relation from that date.

The plantiffs contend that the application of the doctrine of relation must be limited to those cases where the grantor at the time of the conveyance had at least an equitable title to the property conveyed, and that it should not be applied in the case at bar because Tendolle at the time he gave the deed to Taylor had no equitable title to the minerals in the land. If, by equitable title, is meant the complete equitable interest or vested right such as is held by an entryman who has perfected his entry by final proof and payment, it will have to be conceded that Tendolle had no such title when he gave the deed in question. He had, however, what may be called an imperfect equitable right comparable to the right of an entryman of public lands who has not yet perfected his entry. He was in the process of acquiring the title. Sylvester v. Washington, 215 U. S. 80, 54 L. Ed. 101. The cases already referred to, and many others, establish that the patent will in a proper case be held to relate back to the entry, if that be the inception of title, and not merely to the date of the perfection of the right to the property. See Knapp v. Alexander Co., 237 U. S. 162, 59 L. Ed. 894; Hammond v. Johnston, 93 Mo. 198, 6 S. W. 83; Northern P. R. Co. v. Townsend, 84 Minn. 152, 160, 86 N. W. 1007. In Roberts v. Hudson, 25 Wyo. 505, 173 Pac. 786, the grantor in the conveyance had not then made final payment.

In Orrell v. Bay Manufacturing Co., 83 ˙Miss. 800, 36 So. 561, 70 L. R. A. 881, a case cited in Roberts v. Hudson, supra, it appeared that the entryman of a homestead, before final certificate, gave a lease or contract conveying the turpentine rights in the timber on the land. At the time of that lease the entryman had no right to the use of the timber except for certain limited purposes. After the perfection of the entry, the entryman gave a similar lease to a different lessee. In a contest between the holders of these conflicting leases, it was held that the first lessee had the better right, the doctrine of relation being applied in support of the right. This case was cited in Hafemann v. Gross, 199 U. S. 342, 347, 26 S. Ct. 80, 50 L. Ed. 220, where, although the doctrine of relation was not discussed, Mr. Justice Brewer remarked that:

"Obviously, the trend of the authorities is strongly in favor of the proposition that a mortgage or deed of trust by one seeking an entry under the preemption or homestead laws of the United States, made prior to the perfection of his equitable right, is valid."

While there are cases in which it is said that the patent will relate back to the date of the acquisition of the equitable title, an examination of the facts in those cases will generally disclose that the conveyances in question were made after the equitable title had been acquired, and it was not necessary to hold that the patent related back to the date of entry. In a particular case, the doctrine of relation need be applied no further than is necessary for the protection of the grant or assignment in question. So, in this case, we do not need to inquire whether the legal right to the minerals would relate back to a date prior to the filing of the application for a permit.

We have considered rather carefully the case of Robinson Mercantile Co. v. Davis, 26 Wyo. 484, 187 Pac. 931,

relied on by plaintiffs as support for the contention that the legal title obtained by patent cannot relate back to a date anterior to the acquisition of the equitable title. In that case it appeared that December 29, 1909, Henry E. Ware gave to William H. Ware a warranty deed to 40 acres of land; June 17, 1911, William H. Ware gave a mortgage on that 40 acres with other lands; September 12, 1912, the Robinson Mercantile Co. obtained a judgment against William H. Ware; December 26, 1913, Henry E. Ware obtained patent from the United States for the 40 acres. The Supreme Court reversed the decision of the District Court in so far as it held the 40 acres subject to the mortgage in preference to the judgment of September 12, 1912. The case was remanded for a new trial on that point. The mortgagee was relying on the fact that Henry E. Ware had obtained his final receipt for the 40 acres in the year 1907, but failed to prove that fact. The judgment of the District Court was on a finding that at the time the mortgage was given, Henry E. Ware had made his final proof. The record contained no evidence to support the finding. It does not appear from the opinion that there was proof of the date when Henry E. Ware made his entry of the land, nor that it was contended that the patent should take effect by relation from the date of the entry. Roberts v. Hudson, supra, was distinguished, but Balch v. Arnold, 9 Wyo. 17, 59 Pac. 434, was not considered. Statements in Robinson Mercantile Co. v. Davis that seem to support the view that the doctrine of relation cannot in any case be applied to uphold a conveyance made by the entryman before he had acquired a perfect equitable title or vested right to the property, must be considered as limited to the facts and contentions in the decided case.

The judgment of the District Court is affirmed.

*Affirmed.*

BLUME, C. J., and RINER, J., concur.

**454**

KIMBALL, Justice.

Following our decision, June 6, 1928, not yet published, plaintiffs in error have filed a petition for a rehearing supported by an exhaustive brief. A consideration of the petition and brief has not caused us to doubt the correctness of our decision, and we think a further discussion of the legal principles involved would be of no value.

We have never thought that any difficult or doubtful question was presented by the contention that the judgment should be reversed on the ground that the decision of the trial judge on the issue of fraud was not supported by sufficient evidence. That issue was so clearly one of fact for the trial court that we did not deem it necessary to set forth the evidence at any length. In our opinion, we said that Taylor's testimony was corroborated in some important particulars by other persons who were present at the time the bargain was made "and by the notary before whom the deed was acknowledged." It is now called to our attention that we were in error in saying that Taylor's testimony was corroborated by the notary. The notary was not a witness at the trial, although other witnesses testified as to what the notary said to Tendolle at the time the deed was acknowledged. The fact that the notary did not testify would not warrant a change in our opinion that the finding of the trial judge on the contested issue of fact cannot be disturbed by this court.

*Rehearing denied.*

BLUME, Ch. J., and RINER, J., concur.