George R. WALLIKER, Jr., Appellant (One of defendants below),

and Florence H. Walliker, husband and wife, (One of defendants below).

v.

Kay Diana ESCOTT, Minnie R. Hogan, Virginia P. Hooper, Virginia Parr Nasmyth, Charles R. Parr, Individually and as Guardian for Mildred R. Meza, an incompetent, Harold E. Pearson, Donald P. Pearson, and Harriet Parr Workinger, Appellees (Plaintiffs below).

Kay Diana ESCOTT, Minnie R. Hogan, Virginia P. Hooper, Virginia Parr Nasmyth, Charles R. Parr, Individually and as Guardian for Mildred R. Meza, an incompetent, Harold E. Pearson, Donald P. Pearson, and Harriet Parr Workinger, Appellants (Plaintiffs below),

v.

George F. WALLIKER, Jr., and Florence H. Walliker, husband and wife, Appellees (Defendants below).

Nos. 5197, 5198.

Supreme Court of Wyoming.

March 21, 1980.

Ross D. Copenhaver, P. C., Powell, and William C. Martin, of Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or.,

for George F. Walliker, Jr., appellant in Case No. 5197, and for appellees in Case No. 5198.

Charles G. Kepler and L. B. Cozzens, of Simpson, Kepler & Cozzens, Cody, for appellees in Case No. 5197 and appellants in Case No. 5198.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This is a quiet-title action brought by the plaintiffs-appellees [1], who are the successors in interest to Pearson and Robertson, grantees of the original patentee, Geneva Walliker. Appellant-George Walliker, Jr., is the heir of the patentee. On July 14, 1928, Geneva Walliker purported to convey to Pearson and Robertson separate undivided one-third interests in the oil and gas underlying certain lands in Park County, Wyoming.

At the time of the conveyances, Geneva Walliker had entered the property under the Carey Act, now § 36–7–101, et seq., W.S.1977. Prior to entry, she had contracted for shares in the Cody Canal Association to provide water for the land and had paid the state one-half of the land fee. In the process of perfecting her interest, she had progressed to the point where she was in possession of a certificate of location and a receipt from the Wyoming land commissioner. Mrs. Walliker was not, however, issued a patent to the land until some three years after the conveyances to Pearson and Robertson.

The relevant part of the 1928 conveyances read as follows:

". . . That the said party of the first part, for and in consideration of One and no/100 ($1.00) . . . has Remised, Released and Quit Claimed . . . an undivided one-third interest in and to all oil and/or gas . . . ."

The district court held the instruments to be sufficient to convey the designated mineral interests and awarded summary judgment to the plaintiffs. The above facts are not in dispute.

In the district court, the plaintiffs urged that under the doctrine of relation [2] the 1928 conveyances became effective when Geneva Walliker acquired title to the lands in 1931. In support of their position, plaintiffs offered an affidavit of Ernest J. Goppert. The affidavit says that Goppert was Geneva Walliker's attorney in 1928 and Geneva had agreed with Pearson and Robertson to execute and deliver the conveyances in consideration for their providing the funds to purchase the Cody Canal water rights and to pay the State of Wyoming the fee for the land. The plaintiffs argued that, because of the facts contained in the affidavit, Walliker should be estopped from contesting the conveyances.

The defendants objected to the introduction of the Goppert affidavit. They also requested that the trial court give them additional time to rebut the affidavit in the event that their objection was overruled. It was their contention that neither the relation doctrine nor estoppel would validate the conveyances in view of the quitclaim language therein contained.

The trial court rejected the estoppel argument, found no need to rule on the admissibility of the Goppert affidavit, rejected the request for additional time, and found

1. The plaintiffs were successful in the district court and are the appellees in Case No. 5197. Case No. 5198 (in which the plaintiffs describe themselves as appellants) apparently arose because the plaintiffs erroneously believed that it was necessary or prudent to cross-appeal in order to urge upon this court an alternative rationale for the district court's judgment, which was rejected by the district court. See, for example, the penultimate paragraph of *Dechert v. Christopulos,* Wyo., 604 P.2d 1039, 1046 (1980).

2. Under the doctrine of relation, a patent from the United States operates to transfer title not merely from the date of patent, but from the inception of the equitable right upon which it is based. *Roberts v. Hudson,* 25 Wyo. 505, 173 P. 786, 787 (1918), citing *United States v. Detroit Lumber Co.* 200 U.S. 321–334, 26 S.Ct. 282, 286, 50 L.Ed. 499 (1906). The meaning of the phrase "inception of the equitable title" will be discussed in considerable detail below.

for the plaintiffs-appellees upon the relation doctrine.

On appeal, the appellees have undertaken to bolster their relation argument with the facts contained in the Goppert affidavit. Appellant protests this with the contention that this court may not decide the issue of the admissibility of the affidavit since the trial court did not admit it. Appellant goes on to urge that if the trial court had admitted the document, it would have been required to grant the continuance for rebuttal.

We will accede to this argument since we do not consider the affidavit essential to our decision. We, therefore, undertake our inquiry by asking whether the undisputed facts *admitted into evidence* support the conclusion by the trial judge that, under the doctrine of relation, title to the oil and gas interest passed to the grantees when Walliker acquired patent to the land.

## RELATION

*Is There a Statutory Bar to Applying the Doctrine in This Case?*

Appellant claims that the conveyances with which we are concerned are quitclaim deeds. He then urges a statutory bar to the application of the doctrine by reason of § 34–2–105, W.S.1977, which says:

"Every deed in substance in the form prescribed in the foregoing section [§ 34–2–104], when otherwise duly executed, shall be deemed and held a sufficient conveyance, release and quitclaim to the grantee, his heirs and assigns, in fee of all the then existing legal or equitable rights of the grantor in the premises therein described, *but shall not extend to after acquired title unless words are added expressing such intention.* (Laws 1895, ch. 93, § 2, 2nd par.; R.S.1899, § 2769; C.S. 1910, § 3661; C.S.1920, § 4618; R.S.1931, § 97–204; C.S.1945, § 66–204; W.S.1957, § 34–45.)" (Emphasis supplied.)

Section 34–2–104, W.S.1977, provides:
"Form of quitclaim deed.

"Quitclaim may be in substance in the following form:

"Quitclaim Deed

"A.B., grantor (here insert grantor's name or names, and place of residence) for the consideration of (here insert consideration) conveys and quitclaims to (here insert grantee's name or names) *all interest* in the following described real estate, (here insert description) situate in the county of ......, in the state of Wyoming.

"Dated this .... day of .... A.D. ...

".......... A.B.
(Laws 1895, ch. 93, § 2; R.S.1899, § 2768; C.S.1910, § 3660; C.S.1920, § 4617; R.S. 1931, § 97–203; C.S.1945, § 66–203; W.S. 1957, § 34–44.)" (Emphasis supplied).

Appellees contend that the deeds in question are not quitclaim deeds within the meaning of § 34–2–105, supra, because they do not relinquish the grantor's entire interest and, therefore, the "after acquired title" prohibition is not applicable to the conveyances. The two above-quoted statutes were enacted in 1895 in virtually identical form and have been the law of this state ever since. As can be seen, the statutory quitclaim form provides for a release of the grantor's *entire* interest, id., while the conveyances with which we are concerned in this appeal purport to transfer a partial interest, leaving a residual equitable interest in the grantor.

We think appellees' point is well taken. We note that § 34–2–105, W.S.1977, begins with the phrase, "Every deed in substance in the form prescribed in the foregoing section . . . ." There is an obvious and substantial difference between a deed which conveys the grantor's entire interest and one which conveys only a portion of the grantor's interest. Consistent with the after-acquired-title philosophy of §§ 34–2–104 and 34–2–105, supra, when a grantor who does not possess legal title quitclaims his *entire* interest in a piece of real property, the grantee cannot then expect that such a grant carries with it the implication that

grantor has retained an equitable interest capable of ripening into legal title from which the grantee will then be permitted to claim. But when a desert-land entrywoman quitclaims *a portion* of the mineral estate, while retaining an equitable interest in the surface estate, it is then logical for the grantee to expect that the grantor will later perfect legal title and thus perfect the grantee's mineral interest. We said as much in a 1918 opinion which involved a similar issue. *Roberts v. Hudson,* supra, fn. 2.

Roberts, a desert-land entryman, borrowed money from Hudson and gave as security a quitclaim deed to the desert land in which he owned an equitable interest, but in which he did not have legal title. Roberts defaulted on the loan and Hudson sued to execute on the property after Roberts had acquired legal title. Roberts contended that he

> "had no title or interest in the land which he could convey or mortgage, and that, the instrument being in form a quitclaim, it created no lien upon the title he afterward acquired by patent." 173 P. at 787.

In rejecting this claim, we said:

> ". . . The mortgage therefore was a valid lien upon the equitable interest or title then held by Roberts. The legal title thereafter conveyed to him by the patent was based upon that equitable one, and without which no patent could rightfully issue. . . ." Id.

We did not specifically confront the predecessor of § 34–2–105, W.S.1977, in *Roberts.* However, ten years later, we did consider this statute in a case involving a deed containing the word "quitclaim" which purported to convey a mineral interest. The interest had been granted by an agricultural entryman [3] who, at the time, possessed only an equitable mineral interest

but who later acquired an oil and gas prospecting permit. *Tendolle v. Eureka Oil Syndicate,* 38 Wyo. 442, 268 P. 185 (1928). The deed in question, discussed in footnote 3, supra, was claimed to be ineffective on statutory grounds. We rejected the claim and said:

> "Section 4617, W.C.S.1920, provides that a quitclaim deed may be substantially in the form therein set forth. By the granting clause of this statutory form deed the grantor 'conveys and quitclaims' to the grantee 'all interest' in the described real estate. Section 4618 provides that every deed in substance in the form prescribed by section 4617 shall be deemed and held a sufficient conveyance . . 'but shall not extend to after acquired title unless words are added expressing such intention.' . . . We do not think the deed is a mere quitclaim. While the granting clause uses words appropriate for a quitclaim, it also uses the words 'grant, bargain, sell.' The words of grant are not in our opinion so important as the fact that the deed purports to transfer a definite, specific interest. The property about which the parties were contracting was 3½ per cent. of the minerals in a certain tract of land. The deed does not purport to convey merely the grantor's interest in that property, but the property itself, and if it be necessary to give the deed a name, we would call it a deed of bargain and sale, and not a quitclaim. We need not inquire whether the words, 'after acquired title,' as used in the statute, include a title which the grantor is in process of obtaining." 268 P. at 187.

■ We hold that a deed which quitclaims only a fractional mineral interest is not a quitclaim deed substantially similar to the one in § 34–2–104, W.S.1977, and that

---

3. Tendolle was "an agricultural entryman entitled to a preference right to a permit and lease under section 20 of the Leasing Act (41 Stat. 445 [30 U.S.C.A. § 229])" 268 P. at 185. In June of 1921, Tendolle filed an application for an oil and gas prospecting permit. In September of that year, Tendolle executed a deed to an undivided interest in oil, gas and other minerals. The deed recited that the grantor "does . . . grant, bargain, sell, release and forever quit claim . . . ." The next year, Tendolle was awarded an oil and gas prospecting permit under the above-cited statute. He was also awarded a patent under the Homestead Law. (The patent reserved the oil and gas for the United States.) Id.

§ 34–2–105 and § 34–2–104, W.S.1977, have no application to a deed quitclaiming a fractional mineral interest.

### May the Doctrine of Relation be Applied to an Imperfect Equitable Interest?

Since we do not find a statutory bar to the application of the doctrine of relation, it is now appropriate to consider the doctrine in more detail. In *Roberts*, supra, we quoted the United States Supreme Court to explain the doctrine:

> "A patent from the United States operates to transfer the title, not merely from the date of the patent, but from the inception of the equitable right upon which it is based. . . ." *United States v. Detroit Lumber Co.*, supra, fn. 2, cited in *Roberts*, supra, at 173 P. 787.

Appellant argues that the deeds in controversy were executed "prior to the acquisition of equitable rights in the land by Geneva Walliker," and, therefore, the doctrine should not be applied. They correctly point out that in *Roberts*, in contrast to the instant case, the entryman had done everything he could possibly do to obtain patent. (Roberts had submitted proofs that he had used the land as required for the requisite number of years, but his patent was held up until the United States approved a survey. Geneva Walliker, at the time of the deeds in question, had only recently entered the land; she had not yet proved—nor could she have at that time proved—entitlement to a patent. However, as recited above, Walliker, prior to executing the deeds in controversy, had received a certificate of location from the State, had paid the State a fee and had contracted for shares in a canal company to irrigate the land. Thus, she undeniably had *some* equitable interest in the land at the time of the deeds.)

Appellant also cites *Robinson Mercantile Co. v. Davis*, 26 Wyo. 484, 187 P. 931, 932–933 (1920). In that case, the entryman's grantee had mortgaged the property prior to patent being issued to the entryman. The issue relevant to this discussion was the validity of the mortgage: Did the *grantee* have an interest to mortgage? In *Robin-*

*son*, we reversed the trial court's determination that the mortgage was good with respect to the land discussed. We remanded for a new trial because

> "[t]here is nothing in the record showing that Henry E. Ware had any title, either legal or equitable, to this land prior to the date of the patent, December 26, 1913, or showing that he had made final proof thereon prior to the date of the mortgage. . . ." *Robinson*, supra, at 187 P. 932.

This statement, as well as the related discussion, implies that an equitable right sufficient for the doctrine of relation requires proof of entitlement to the land. However, *Robinson* does not discuss the sufficiency of lesser-equitable interests and there is nothing there to indicate that proof of any lesser-equitable interests was in the record. As against this implication, appellees cite *Tendolle*, supra, which distinguished *Robinson*. At the time that the *Tendolle* grantor deeded a fractional interest in the royalties from the land, he had a right to obtain a permit to prospect for oil and gas. However, we pointed out that the grantor's right to the permit did not give the grantor the right to the oil and gas until the oil was discovered and taken. In *Tendolle*, we said:

> "The plaintiffs contend that the application of the doctrine of relation must be limited to those cases where the grantor at the time of the conveyance had at least an equitable title to the property conveyed, and that it should not be applied in the case at bar because Tendolle at the time he gave the deed to Taylor had no equitable title to the minerals in the land. If, by equitable title, is meant the complete equitable interest or vested right such as is held by an entryman who has perfected his entry by final proof and payment, it will have to be conceded that Tendolle had no such title when he gave the deed in question. He had, however, what may be called an imperfect equitable right comparable to the right of an entryman of public lands who has not yet perfected his entry. He was in the process of acquiring the title. [Citations omitted]. The cases already referred to,

and many others, establish that the patent will in a proper case be held to relate back to the entry, if that be the inception of title, and not merely to the date of the perfection of the right to the property. . . ." 268 P. at 187–188.

*Tendolle* distinguished *Robinson* because

"[i]t does not appear from the opinion that there was proof of the date when Henry E. Ware made his entry of the land, nor that it was contended that the patent should take effect by relation from the date of the entry . . . Statements in *Robinson* . . . that seem to support the view that the doctrine of relation cannot in any case be applied to uphold a conveyance made by the entryman before he had acquired a perfect equitable title or vested right to the property, must be considered as limited to the facts and contentions in the decided case." 268 P. at 188.

■ We are persuaded that *Tendolle*, not *Robinson*, is controlling in the present case.

We hold, as we did in *Tendolle*, that an imperfect equitable right in land may suffice to apply the doctrine of relation.[4]

### *Should the Doctrine of Relation be Applied in this Case?*

■ Appellant cites us to *Roberts*, wherein we said: "T[he] doctrine of relation is a fiction of law resorted to whenever justice requires." 173 P. at 787. Appellant argues that the grantees knew that Walliker lacked a perfected interest and that the grantees paid a nominal consideration and, therefore, justice does not require application of the doctrine of relation. We do not think it can be seriously argued that a recitation of a consideration of One Dollar in a deed demonstrates that the consideration underlying the deed was in fact One Dollar and was, therefore, insufficient consideration to support the contract. In *Tendolle* the consideration recited in the deed was One Dollar, and that did not prevent the application of the doctrine of relation.

4. Appellant also cites *Caldwell v. Bush*, 6 Wyo. 342, 45 P. 488 (1896) and *Muir v. Bosey*, 23 Wyo. 46, 146 P. 595 (1915), for the proposition that, "The entryman had no equitable interest in the land until final proof and final payment had been submitted." We do not consider this an accurate statement of the law. *Caldwell* dealt with the power of the federal land office to cancel an entry of public land. There is language in *Caldwell* to the effect that prior to issue of patent, but after the entryman has proved his entitlement thereto, the entryman has "an equitable interest in the lands, the government holding merely the naked legal title as his trustee." 45 P. at 489. Prior to proof of compliance with the Carey Act requirement, the entryman "has not a title, but the right to one, upon compliance with the conditions imposed upon him." Id. We do not read this language to mean that the entryman has *no* equitable interest in the lands he enters until he proves his entitlement to patent. *Caldwell* was not concerned with the extent of the equitable interest held by an entryman before entitlement to patent. The same criticism applies to appellant's citation of *Muir*, supra.

Appellant also cites *Waisner v. Waisner*, 15 Wyo. 420, 89 P. 580 (1920), for the proposition that an interest in desert entry lands cannot be conveyed before the entryman becomes entitled to receive a patent. *Waisner* involved the issue of whether certain homestead and desert entry lands prior to the entitlement of patent were or had become partnership lands rather than the personal property of the entryman. We said in *Waisner*, at 89 P. 584:

". . . His original homestead entry amounted to nothing more than a declaration of intention, and, while he thereby obtained an inchoate title, he did not acquire any vested right against the government or any ownership in the land . . . It is urged that impliedly the entries were for and inured to the benefit of the firm, and should therefore be deemed and considered assets of the firm. An express agreement, and of course an implied one, to that effect, *with reference to the homestead*, would be void as against public policy . . . *There is no showing that the law is different with reference to obtaining title to the land embraced in the desert entry.* . . ." (Emphasis supplied.)

However, there is in fact a difference in the right of the entryman to alienate an interest in lands entered under different acts. *Adams v. Church*, 193 U.S. 510, 24 S.Ct. 512, 48 L.Ed. 769 (1904). *Adams* cites federal law requiring a homesteader not to make any alienation of the land before he receives his patent. As we discuss, *infra*, this is not strictly the case with desert lands. Moreover, there is an obvious distinction between a desert-land entryman, who must be an actual settler, reclaiming the surface estate for the benefit of a partnership and his reclaiming the surface estate for his sole use and benefit while having sold a fraction of the mineral estate. We consider *Waisner* inapplicable for these reasons.

Appellant does not cite us any portion of the record which indicates that the grantees knew of Walliker's lack of legal title *and thereby intended to engage in a futile act* in obtaining the quitclaim deeds. Indeed, *Tendolle* was decided prior to the execution of the deeds in the case at bar. It is a settled rule that parties making an agreement are presumed to know the law and to contract with reference to the law. *Click v. Seale*, Tex., 519 S.W.2d 913, 920 (1975). Applying this rule, we must presume that Walliker and her grantees executed the quitclaim deeds with knowledge of the *Tendolle* decision and the likely consequence that the deeds would become effective if and when Walliker acquired legal title.

 Appellant also argues that the purported conveyances are against the public policy that Carey Act lands should go to the actual settler. From this, he suggests that the interests of justice militate against applying the doctrine of relation. Both side cite the Federal Carey Act, 43 U.S.C. § 641, which contains this language:

> "As fast as any State may furnish satisfactory proof . . . that any of said lands are irrigated, reclaimed and occupied by actual settlers, patents shall be issued to the State or its assigns for said lands so reclaimed and settled: . . ."

We agree with the appellees that nothing in this language is inconsistent with the actual settler selling a fractional mineral interest while continuing to irrigate, occupy and reclaim the surface estate in a good-faith effort to make the land agriculturally productive.[5] We accept appellees' argument that Congress left up to the states the option of imposing requirements in addition to those of the Federal Carey Act and that this court should not create a restraint on alienation which our legislature did not choose to create. Cf., *Adams v. Church*, supra, fn. 4, (the statutory language of the Timber Culture Act of 1878, in contrast to that of the Homestead Act, does not prohibit a good-faith entryman from alienating an interest in the lands prior to the issuance of the final certificate) with *McMillan v. Wright*, 56 Wash. 114, 105 P. 176 (1909) (Idaho law requires that a desert-land entryman make oath that he entered the land for his *sole* lease and benefit.). Nothing in the Wyoming Carey Act, § 36-7-101, et seq., W.S.1977, prohibits the conveyances in dispute in this case. (See, in particular, § 36-7-403 and § 36-7-404, W.S.1977.)

The judgment of the district court is affirmed.

---

5. We are also unpersuaded that the appellant's cause is advanced by a statement in *Batzer Oil Company v. Ohio Oil Company*, 188 F.Supp. 367 (D.Wyo.1960), to the effect that Carey Act land should go to actual settlers. *Batzer Oil* was a case "probing the title to the mineral estate in a right of way granted by the State of Wyoming to the Big Horn Colonization Company . . . ." Id., at 368.