Caroline KIRKWOOD, as Personal Representative of the Estate of Arthur Lynn Kirkwood, Sr., Deceased, and Caroline Kirkwood, Individually, Appellants (Plaintiffs),

v.

CUNA MUTUAL INSURANCE SOCIETY, Appellee (Defendant).

No. 96–209.

Supreme Court of Wyoming.

April 9, 1997.

James R. McCarty and Dallas J. Laird, Casper, for Appellants.

James R. Bell and Michele L. Lorenzen of Murane & Bostwick, Casper, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellants Caroline Kirkwood and the Estate of Arthur Lynn Kirkwood, Sr. appeal from the partial summary judgment which was granted in favor of Appellee CUNA Mutual Insurance Society.

We affirm.

## ISSUES

The appellants present two issues for our analysis:

I. Whether the policy language used by CUNA was ambiguous, thereby precluding Summary Judgment.

II. Whether the Court improperly dismissed Count Two and Count Three of the Amended Complaint as there were facts to support each of those Counts in the record.

## FACTS

The Kirkwoods borrowed money from a credit union in October and November of 1992. In connection with these loans, Arthur Kirkwood, Sr. (Arthur) signed credit insurance applications which were printed at the bottom of the note and disclosure statement forms provided by the credit union. Certificates of insurance were provided as a part of the transactions. As a member of the credit union, Arthur was eligible to receive credit life insurance under the group credit insurance policy issued by CUNA to the credit union. By applying for the insurance in connection with the loans and by paying the premiums, Arthur became an insured under the policy.

In April of 1993, Arthur refinanced the November loan, increasing the principal amount of that loan. The loan officer explained to Arthur that, if he were to die, the credit life policy would pay off his loans. Arthur received copies of the notes and the certificates of insurance.

Each certificate of insurance contained a credit insurance application which was identical to the application printed at the bottom of each note. The applications contained an

"insurance maximums" box which provided that the maximum insurable balance per loan account was $30,000. The applications indicated that Arthur had applied for "single credit life" coverage rather than for "joint credit life" coverage.

Arthur died on August 8, 1993. His wife requested benefits of $30,000 under each policy, less the balances of the corresponding loans. CUNA rejected the request, contending that it was only obligated to pay off Arthur's loans plus not more than six months of unpaid interest. The appellants filed a complaint in which they alleged numerous causes of action. CUNA filed a motion for a partial summary judgment on the appellants' claims for breach of contract, negligent failure to pay death benefits under the policies, and negligent infliction of emotional distress.

The district court granted CUNA's motion, finding that the insurance contract was not ambiguous. The district court also dismissed the appellants' claims for negligent failure to pay and negligent infliction of emotional distress because these claims were not independent of the appellants' bad faith claim. This interlocutory appeal is brought pursuant to W.R.C.P. 54(b).[1]

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Garcia v. Lawson,* 928 P.2d 1164, 1166 (Wyo. 1996); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. 928 P.2d at 1166. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Id.* We do not accord any deference to the district court's decisions on issues of law. *Id.*

## DISCUSSION

### A. Count One

The appellants contend that the language which CUNA used in the policies was ambiguous thereby precluding the entry of a summary judgment. More specifically, the appellants claim that the language in the benefits section of the certificates of insurance gave the impression that the beneficiary or Arthur's estate was entitled to receive $30,000 under each policy, less the amount owed on the corresponding loan. CUNA counters that a summary judgment was proper because the benefits which were payable under the terms of the credit life insurance policy were limited to the principal balances of the loans on the date of death plus not more than six months of unpaid interest.

 Insurance policies are contracts, and general rules of contract construction apply to them. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255, 1258 (Wyo.1988). When we interpret contracts, we ascertain the meaning of the words used to express the parties' intent. *Doctors' Company v. Insurance Corporation of America,* 864 P.2d 1018, 1023 (Wyo.1993). We determine the parties' intent by analyzing the instrument which memorializes the parties' agreement as a whole. *Id.* Under our standard of interpretation for insurance policies, we give the words used the plain meaning that a reasonable person, in the position of the insured, would understand them to mean. *Id.*

 In order for a summary judgment to be appropriate, the contract must be unambiguous. *Id.* An ambiguity exists when a contract is "obscure in its meaning because of indefiniteness of expression or because it contains a double meaning." *Ferguson v. Reed,* 822 P.2d 1287, 1289 (Wyo.1991).

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the con-

---

1. Although the district court found that there was no just cause for delay under the provisions of W.R.C.P. 54(a), we believe the cite to section (a) rather than to section (b) was merely a typographical error.

tract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. . . . As we have said, "[w]e are . . . at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a conclusion thereon one way or the other."

*Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo.1996) (citations omitted) (quoting *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 463, 465 (Wyo. 1980)).

█ When contract provisions are not ambiguous or uncertain, the document speaks for itself, and parol evidence which tends to show that a prior or contemporaneous oral agreement or tacit understanding was made with respect to the agreement terms is inadmissible. *Patel v. Harless*, 926 P.2d 963, 965 (Wyo.1996). An ambiguity cannot be created by a disagreement between the parties as to the meaning of the contract, *see St. Paul Fire and Marine Insurance Co.*, 763 P.2d at 1258, and the contract's language will not be "tortured" to create an ambiguity. *Doctors' Company*, 864 P.2d at 1024.

█ The certificates of insurance which are at issue in this case contained a section which described the benefits. The first general paragraph regarding benefits provided:

Benefits are paid to your credit union to pay off or reduce your loan. If the benefits are more than the balance of your loan, the difference will be paid to you if you are living or to the Beneficiary named by you, if any, or to your estate. Our payment will completely discharge our liability to the extent of the payment.

The second paragraph, which was placed under the heading of "Death Benefit," read:

**Death Benefit.** If you die while you are insured for life coverage, we will pay the principal balance of your loan on the date of your death, plus not more than six (6) months unpaid interest on your loan to that date, not to exceed the Maximum Amount of Life Insurance.

The policy issued by CUNA to the credit union contained the following provisions relating to death benefits:

**WHO IS INSURED**

**Single Life Insurance Benefit.** For single life coverage, the borrower who is insured for the loan will be the eligible member who applied for the insurance and whose name is shown on the Certificate of Insurance.

. . . .

**BENEFITS**

Any death benefits under this Policy will be paid to you once we receive written proof of the death of the insured member. You will apply the benefits to reduce or pay off the loans for which payment is made. You will pay any excess benefits to the beneficiary named by him or to his estate. Our payment will completely discharge our liability to the extent of the payment.

If a member or a joint insured dies while he is insured under this Policy for a loan, we will pay the principal balance of his loan on the date of his death, plus not more th[a]n six (6) months unpaid interest on his loan to that date. Our payment will not exceed the Maximum Amount of Life Insurance stated in the Application.

The insurance maximums section of each application provided:

| INSURANCE MAXIMUMS | DISABILITY | LIFE |
|---|---|---|
| MONTHLY TOTAL BENEFIT | $600 | N/A |
| INSURABLE BALANCE PER LOAN ACCOUNT | $30,000 | $30,000 |
| MAXIMUM AGE FOR INSURANCE | 66 | 70 |

The first paragraph in each certificate of insurance generally described the method for paying the benefits which were available under the policy and was followed by three sections: the "Death Benefit," the "Joint Insured Death Benefit," and the "Total Disability Insurance Benefit" sections. This gener-

al paragraph did not promise more benefits than those benefits which were described in the "Death Benefit" section. It did not, as the appellants assert, indicate the amount which would be paid. The statement that the difference would be paid to the named person was conditioned by the clause, "[i]f the benefits are more than the balance of your loan." This provision did not grant benefits which exceeded the loan balance. The language applied to both death and disability benefits and not to just the death benefits. In order to determine what benefits were to be paid, the specific description of the situation—death or disability—had to be consulted.

The language in the insurance maximums section of each certificate of insurance stated that the maximum insurable balance per loan account was $30,000. When this information is read in conjunction with the death benefit provision, the certificates of insurance required CUNA to pay off the balances of the loans on the date of death but did not require CUNA to pay more than $30,000 on each loan.

We recognize that exact benefit amounts were not supplied. This does not surprise us given the fact that the benefit amounts were calculated as of the date of death on the basis of the remaining loan balances. Since the loan balances changed over time, the amounts of the death benefits changed as the loan amounts were reduced.

Furthermore, the fact that the certificates of insurance included a statement which read, "[i]f the benefits are more than the balance of your loan, the difference will be paid to you if you are living or to the Beneficiary named by you, if any, or to your estate," does not concern us for two reasons. First, WYO. STAT. § 26–21–107(b)(ii) (1991) requires that this language appear in the certificates of insurance. Second, the language addresses a situation in which a loan balance changes after the date of death. For example, a payment might be applied to a loan through an automatic payment plan from a decedent's paycheck which is issued after his death. This could occur before a notice of the claim is filed for death benefits and would reduce the loan balance. In such a situation, CUNA would be required to pay the credit union the amount of the loan balance as of the date of death. Since an additional loan payment would have been made by virtue of an automatic payment, this additional payment would result in the benefits being more than the loan balance, and the excess amount would then be paid by the credit union to the decedent's estate.

■ The Wyoming statutes which govern credit life insurance prohibit the appellants' proposed reading of the contract. WYO. STAT. § 26–21–104 (1991) provides in pertinent part:

(a) The initial amount of credit life insurance shall not exceed the total amount repayable under the contract of indebtedness.

(b) If an indebtedness is repayable in substantially equal installments, the amount of insurance shall not exceed the scheduled or actual amount of unpaid indebtedness, whichever is greater.

This provision was incorporated into the insurance contract between the parties by virtue of WYO. STAT. § 26–21–101(a) (1991) and also by the specific policy language which read: "This Policy is governed by the laws of the state in which it is delivered." This statute prohibits CUNA from paying $30,000 to the appellants on each loan since the loans were never insured for that amount.

The notes indicated that one loan was for $11,057 and that the other loan was for $5,000. In the event that Arthur had died before making even one payment, his death benefits by law could not have exceeded the total of these amounts. Here, Arthur died after making payments against his indebtedness. His benefits by law could not exceed the remaining amount of his indebtedness.

■ The language which the appellants contend made the contract ambiguous is required by statute to be a part of the certificates of insurance. Section 26–21–107(b)(ii) provides:

(b) Each individual policy or group certificate of credit life insurance or credit disability insurance, or both, in addition to other requirements of law, shall:

. . .

(ii) State that the benefits shall be paid to the creditor to reduce or extinguish the unpaid indebtedness and, if the amount of insurance exceeds the unpaid indebtedness, the excess is payable to a beneficiary, other than the creditor, named by the debtor or to his estate.

When a statute requires that certain provisions be included in an insurance policy, the provisions are deemed to be consistent with the public policy established by the legislature. *Prudential–LMI Commercial Insurance v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 393, 798 P.2d 1230, 1236 (1990). Parties to an agreement are presumed to know the law and to have contracted with reference to existing principles of law. *Walliker v. Escott*, 608 P.2d 1272, 1278 (Wyo.1980). "These existing principles of law enter into and become a part of a contract as though referenced and incorporated into the terms of the agreement." *Union Pacific Resources Company v. Texaco, Inc.*, 882 P.2d 212, 222 (Wyo.1994).

We conclude that the insurance policy and certificates of insurance were not ambiguous as a matter of law. The benefits equaled the principal balances of the loans on the date of Arthur's death plus not more than six months of unpaid interest.

## B. Counts Two and Three

The appellants maintain that the district court improperly dismissed counts two and three of their amended complaint because the record contained facts which supported each count. CUNA counters that the district court correctly ruled that, as a matter of law, Wyoming does not recognize actions for negligent failure to pay or negligent infliction of emotional distress independent of a bad faith cause of action.

In count two, the appellants complain that CUNA negligently refused and failed to pay death benefits under the policies and that, as a result, the appellants suffered damages in the nature of unpaid death expenses, emotional distress, loss of credit, loss of reputation and credibility, and loss of enjoyment of life. In count three, the appellants allege that CUNA should have been aware that Arthur's wife was suffering extreme anxiety and emotional distress after the death of her husband and that it negligently communicated with her concerning the payment of death benefits. In count four, the appellants claim that CUNA refused to pay valid and legitimate claims without having justification and that, in doing so, CUNA breached its duty to act in good faith which resulted in damages for emotional distress, mental pain and suffering, loss of enjoyment of life, and economic losses.

Prior to 1990, an insured who felt that he had been wronged by an insurance company in the first-party insurance context could sue only for breach of contract. We have, however, adopted a tort cause of action for the breach of an insurer's duty of good faith and fair dealing. *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855, 858 (Wyo.1990). Such a claim is known as a bad faith cause of action. We adopted the bad faith cause of action after recognizing that an insurance contract is a special situation where a duty of good faith and fair dealing should apply. *Id.* Recovery is premised upon the existence of a special relationship that is created by the unequal bargaining power which an insurer has over an insured. *Id.*

In determining whether an insurance company has acted in bad faith, we use an objective standard. Under that standard, " 'where a claim [is] not fairly debatable, refusal to pay would be bad faith.' " *State Farm Mutual Automobile Insurance Company v. Shrader*, 882 P.2d 813, 825 (Wyo. 1994) (quoting *Anderson v. Continental Insurance Company*, 85 Wis.2d 675, 271 N.W.2d 368, 374 (1978)). Such bad faith creates an action in tort. *Id.* This bad faith tort covers both an insurer's obligation to investigate and its obligation to pay its insureds in appropriate situations.

The appellants' cause of action for negligent failure to pay as well as their cause of action for negligent infliction of emotional distress are included within the bad faith tort. They are not sustainable causes of action under Wyoming law apart from a bad faith cause of action, and the appellants were not deprived of a remedy by virtue of their dismissal. Since count four alleged a bad

faith claim, the district court properly found that the claims asserted in counts two and three were contained within count four.

## CONCLUSION

We hold that CUNA was entitled to be awarded a partial summary judgment as a matter of law and that the district court properly dismissed counts two and three of the appellants' complaint.

Affirmed.