**Jack B. WEBER, Appellant (Plaintiff),**

v.

**Theodore N. McCOY, M.D., Appellee (Defendant).**

No. 97–132.

Supreme Court of Wyoming.

Dec. 17, 1997.

Rehearing Denied Jan. 22, 1998.

James A. Coulter, Riverton, for Appellant.

J. Kent Rutledge and Lou Piccioni of Lathrop & Rutledge, P.C., Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Jack Weber (the patient) appeals from the summary judgment which the district court granted in favor of Appellee Theodore McCoy (the doctor).

We affirm.

### ISSUES

The patient offers the following issues for our review:

I.   Whether the District Court erred in concluding appellee met his initial burden of demonstrating the absence of a genuine issue of material fact, when Dr. Stacy Childs' affidavit in support of summary judgment was inadequate, by not providing and stating a standard of reasonable medical probability necessary for admissible evidence in a medical malpractice action, by using speculative and conclusory language and failing to state the standard of care including the substantial risks of this surgery as well as the alternative of doing nothing?

II.   Whether the District Court erred in granting summary judgment to Defendant based on that court's interpretation of timing prescribed by W.R.C.P. Rule 6(c) and whether it exceeded discretion in denying appellant's 6(b) W.R.C.P. motion for enlargement of time for submission of opposition affidavits in view of the actual procedural circumstances and cited definitive case law?

### FACTS

The patient filed a medical malpractice action on February 13, 1995, alleging that the doctor negligently recommended a surgical procedure to deflate a large cyst on the patient's left kidney, that the doctor performed the surgery in a negligent manner, and that the doctor failed to obtain an informed consent from the patient when he did not disclose significant risks of the surgery. The doctor denied being negligent in caring for and treating the patient.

On May 1, 1996, during the course of discovery, the patient designated an expert witness. Subsequently, however, the patient refused to produce that expert so that the doctor could take his deposition. On January 17, 1997, the doctor's attorney called the patient's counsel, attempting to make arrangements for getting the expert's deposition. During that conversation, the patient's attorney disclosed that he had recently learned that his expert witness died on April 5, 1996, almost a full month before he designated him as an expert.

The doctor filed a motion for a summary judgment on January 24, 1997. A brief, along with an affidavit from Stacy Childs, M.D., a board-certified urologist, supported the motion. The district court notified the parties that it would hear the motion during the pretrial conference on February 18, 1997.

On the morning of February 18, 1997, the patient filed his response to the doctor's summary judgment motion along with a motion for more time in which to respond to the doctor's motion. The patient did not provide expert medical testimony in his opposition materials nor did he file an affidavit with his enlargement-of-time motion.

On that same date, the doctor filed a written response to the patient's opposition materials and enlargement-of-time motion. Given the various documents which were filed on

February 18th, the district court vacated the pretrial conference and hearing on the summary judgment motion and rescheduled the hearing for March 13, 1997. On March 12, 1997, the patient served supplemental documentation to support his opposition to the doctor's summary judgment motion.

At the summary judgment motion hearing, after the parties had presented their arguments, the district court asked the parties to provide additional briefing on the limited issue of whether the patient's responsive materials, including the enlargement-of-time motion, were timely filed. After receiving and considering the briefs, the district court denied the patient's enlargement-of-time motion and granted a summary judgment in favor of the doctor. The patient appeals from this order.

### STANDARD OF REVIEW

■ A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Kirkwood,* 937 P.2d at 208. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Id.* We do not accord any deference to the district court's decisions on issues of law. *Id.* The moving party bears the initial burden of establishing a prima facie case for a summary judgment. *Mize v. North Big Horn Hospital District,* 931 P.2d 229, 232 (Wyo.1997). If the movant carries this burden, the opposing party is obligated to demonstrate that a genuine issue of material fact does exist. *Id.*

■ In order to avoid the entry of a summary judgment, a plaintiff in a malpractice case " 'has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his con-

duct was the legal cause of the injuries suffered.' " *Harris v. Grizzle,* 625 P.2d 747, 751 (Wyo.1981) (quoting *Orcutt v. Miller,* 95 Nev. 408, 595 P.2d 1191, 1193 (1979)). In a malpractice case, the plaintiff must establish through expert medical testimony the appropriate standard of care and that the doctor breached that standard of care. *Id.*

### DISCUSSION

#### A. Sufficiency of the Affidavit

The patient contends that Dr. Childs' affidavit was not sufficient to preclude a showing of a genuine issue of material fact because Dr. Childs did not state his opinions in terms of a "reasonable medical probability."

■ Wyoming does not require that an expert use the magic words "reasonable medical probability" in order for his opinion to be considered a competent medical opinion.

"The use of the terms 'probable' and 'possible' as a basis for test of qualification or lack of qualification in respect to a medical opinion has frequently converted this aspect of a trial into a mere semantic ritual or hassle. The courts have come to recognize that the competency of a doctor's testimony cannot soundly be permitted to turn on a mechanical rule of law as to which of the two terms he has employed. Regardless of which term he may have used, if his testimony is such in nature and basis of hypothesis as to judicially impress that the opinion expressed represents his professional judgment as to the most likely one among the possible causes of the physical condition involved, the court is entitled to admit the opinion and leave its weight to the jury."

*Vassos v. Roussalis,* 658 P.2d 1284, 1290–91 (Wyo.1983) (quoting *Norland v. Washington General Hospital,* 461 F.2d 694, 697 (8th Cir.1972)).

The patient claims that our decision in *Hashimoto v. Marathon Pipe Line Co.,* 767 P.2d 158 (Wyo.1989), supports his argument. After reviewing *Hashimoto,* we conclude that the patient's reliance on this case is misplaced. In that case, we addressed an issue regarding the appropriate jury instructions

for a personal injury case. 767 P.2d at 161–67. We held that the instruction should include the term "reasonable probability" instead of the term "reasonable certainty" in its description of the proper standard under which future damages must be proven. 767 P.2d at 165. We did not address the issue of whether an expert must use the phrase "reasonable medical probability" before his testimony will be considered. We decline to depart from our previous determination that such qualifying technical language is not indicative of whether the doctor based his opinion upon the requisite degree of certainty.

## B. Informed Consent

The patient complains that Dr. Childs' affidavit did not demonstrate that the doctor provided the patient with enough information about the surgery to enable him to give an informed consent.

■ This Court has previously discussed what an affidavit must include to adequately support a summary judgment motion on a claim which alleges that informed consent was not obtained. *Havens v. Hoffman,* 902 P.2d 219 (Wyo.1995); *Roybal v. Bell,* 778 P.2d 108 (Wyo.1989). In *Havens* and *Roybal,* we carefully detailed the analysis of the summary judgment process as it pertains to lack of informed consent claims. We summarized the applicable rules as follows:

"Wyoming adheres to the majority position, known as the 'traditional' or 'professional' view, with respect to the required scope of disclosure. This standard provides that the physician is required to disclose only such risks that a reasonable practitioner of like training would have disclosed in the same or similar circumstances. Under this standard, expert testimony is required to establish what a reasonable practitioner would disclose in the same or similar circumstances.

"In order to overcome a motion for summary judgment, a plaintiff in a medical malpractice case must also present evidence, usually in the form of expert testimony, indicating the departure by a medical practitioner from a recognized standard of practice was a proximate cause of her injury. A plaintiff establishes proximate cause in an informed consent case by proof that proper disclosure would have resulted in a decision against the proposed treatment or procedure. . . .

"With the foregoing principles in mind, we look to the materials in the record to determine if genuine issues of material fact exist which would preclude the entry of summary judgment."

*Havens,* 902 P.2d at 222 (quoting *Roybal,* 778 P.2d at 112–13 (citations & footnote omitted)).

■ In his affidavit, Dr. Childs explained that a physician must disclose the usual risks which are associated with a particular type of surgery and that bleeding was an additional risk of the surgery which was performed on the patient. Dr. Childs also averred that the risks which must be disclosed with this type of surgery are those risks which were set forth in the informed consent form that the patient signed. By referring to Dr. Childs' affidavit, the district court was able to specifically determine what risks needed to be disclosed and that the doctor did indeed disclose these risks to the patient.

## C. Timeliness of Opposition Documents

The patient maintains that the district court erred by incorrectly determining that his opposition materials were untimely filed pursuant to W.R.C.P. 6(c)(1) and by denying his motion for an enlargement of time to respond to the doctor's summary judgment motion.

■ W.R.C.P. 56(c) provides: "Unless the court otherwise orders, the motion and any response and other papers relating thereto shall be served pursuant to Rule 6(c)." W.R.C.P. 6(c)(1) provides in pertinent part:

[U]nless the court by order permits service at some other time, a party affected by the motion shall serve a response, if any, together with affidavits, if any, *at least three days prior to the hearing on the motion or within 20 days after service of the motion, whichever is earlier.* Unless the court by order permits service at some other time, the moving party shall serve a reply, if any, at least one day prior to the hearing

on the motion or within 15 days after service of the response, whichever is earlier. Unless the court otherwise orders, any party may serve supplemental memoranda or rebuttal affidavits at least one day prior to the hearing on the motion.

(Emphasis added.) The district court should not receive or consider untimely filed affidavits in summary judgment matters. *Larsen v. Roberts,* 676 P.2d 1046, 1047–48 (Wyo. 1984). To condone a practice which permits parties to simply ignore the Wyoming Rules of Civil Procedure would defeat the purpose for the rules. 676 P.2d at 1048.

██ The district court originally set the hearing on the summary judgment motion for February 18, 1997. Instead of serving his opposing materials in accordance with W.R.C.P. 6, the patient waited until February 18, 1997, to file a written opposition to the doctor's summary judgment motion and a motion for an enlargement of time to respond. On March 12, 1997, the day before the rescheduled hearing, the patient filed and served additional documents in support of his opposition to the doctor's summary judgment motion. He included two affidavits in these documents which purported to oppose the summary judgment motion.

██ The patient asserts that, when the district court rescheduled the hearing date, the deadlines imposed by W.R.C.P. 6(c)(1) also changed. The patient misinterprets this rule. An order which rescheduled a hearing and was entered after the responsive documents were due does not extend the response period. The patient relies on the language in W.R.C.P. 6(c)(1) which allows "supplemental memoranda or rebuttal affidavits at least one day prior to the hearing." This, of course, assumes that adequate opposing materials were timely filed in the first place.

██ . With regard to the enlargement-of-time motion, we rely upon W.R.C.P. 6(b) which provides in pertinent part:

(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court, or a commissioner thereof, for cause shown may at any time in its discretion: (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

In denying the patient's motion for more time, the district court stated:

5. It is undisputed that [the patient's] original expert urologist ... died in April of 1996. Although [the patient] was apparently unaware of this fact until January of 1997, [the patient] should have known about this much earlier due to [the doctor's] requests for taking the deposition of [the expert witness]. Moreover, [the patient] has failed to show that he did not have adequate time to retain another expert. Considering all of the circumstances in this case, [the patient] has had more than enough time to provide responsive materials in opposition to [the doctor's] Motion for Summary Judgment. The Court specifically finds that [the patient] has failed to show either cause or excusable neglect sufficient to justify enlargement of time for filing responsive materials.

Because the patient waited until the prescribed response period had expired to make his motion, he was required to show "excusable neglect." W.R.C.P. 6(b)(2). This Court has defined excusable neglect as being that behavior which might be the act of a reasonably prudent person under the circumstances. *Whitney v. McDonough,* 892 P.2d 791, 794 (Wyo.1995).

The patient maintains that the unknown death of an expert should be viewed as "excusable neglect or at least compassion allowing a just resolution on the merits and not sanctionable lack of diligence." We disagree and echo the district court's findings that the patient should have known about the death of his expert much earlier than he did and that the patient failed to demonstrate that he did not have sufficient time in which to retain another expert. Accordingly, the patient

failed to show excusable neglect which was sufficient to justify being granted an enlargement of time for filing responsive materials.

## CONCLUSION

After having reviewed Dr. Childs' affidavit, we are satisfied that he stated his opinions with the requisite degree of certainty and that the affidavit contained sufficient detail to enable the district court to determine whether the doctor disclosed the necessary information to the patient in order to obtain an informed consent. The district court properly relied on the affidavit, and, because the patient did not timely provide opposing expert medical testimony, the district court correctly granted the summary judgment in favor of the doctor.

Affirmed.